LEONARD BARTON *v.* SAMUEL W. FISK and others.

The plaintiff, claiming to be the owner of certain timber lying on the defendants' land, sued the latter, who also claimed to own the property, to establish his title. He procured a preliminary injunction, forbidding the defendants to assert their alleged ownership by suit in court, or in any other way, pending the principal suit. He failed in that suit, the court determining that the property belonged to the defendants, and not to the plaintiff. In the meantime the plaintiff carried off the timber, destroyed its identity, and disposed of and converted the proceeds to his own use. *Held,* that the measure of the damages which the defendants in the suit were entitled to recover, in an action upon the injunction bond, was *prima facie,* the value of the property in question.

*Appeal from an order of the General Term of the Supreme Court, affirming one made upon the report of a referee appointed to ascertain the damages sustained by the defendants, by reason of an injunction order obtained by the plaintiff at the commencement of the action.*

THE defendants were the owners of a lot of land in Cattaraugus county, on which was lying a quantity of logs, which had been cut on the lot by the plaintiff, or those under whom he claimed title. The plaintiff claimed to own the logs by virtue of an agreement between the former owner of the land, and certain persons who had conveyed their rights to him. The defendants denied that the plaintiff owned them, and asserted title in themselves as the owners of the land on which they were cut. The principal action was brought to establish the plaintiff's title to the logs. A preliminary injunction was obtained, by which the defendants, their agents, &c., were restrained from taking, using, drawing or interfering with the logs, from further prosecuting an action which the defendants had commenced against a person who had acted under the plaintiff's direction in carrying off some of them, and from commencing another suit against that person, or any other

party who, under the plaintiff's authority, should carry off or use the logs or any part of them, and from doing any other act to prevent or hinder the plaintiff or his agents or servants from removing or using the logs. The undertaking of McCoy, the plaintiff's surety, was to the effect that the plaintiff would pay all damages, not exceeding five hundred dollars, which might be sustained by the defendants by reason of the injunction order, if the court should finally decide that the plaintiff was not entitled to the same. The principal action was tried before a referee, on whose report judgment was rendered against the plaintiff, dismissing the complaint on the merits, with costs. On the reference to ascertain the damages, it appeared that pending the suit the plaintiff had drawn away all the logs, and had converted them to his own use, by manufacturing them into lumber, and had made an assignment for the benefit of his creditors, and become insolvent. One Smith Barton acted for the plaintiff in drawing off the logs, and was his agent therein. It did not appear whether he was solvent or insolvent. The value of the logs lying on the ground was shown to be $450, and the defendants' damages were reported at that sum. The plaintiff excepted to the report, and brought up the evidence taken before the referee by way of affidavit; but it was confirmed by the general term; whereupon this appeal was brought. It was submitted on printed arguments.

*A. G. Rice*, for the appellant.

*D. H. Bolles*, for the respondents.

DENIO, Ch. J. This seems to me a very plain case. The plaintiff claiming to be the owner of personal property lying on the defendants' land, sued the defendants who also claimed to own that personal property, to establish his title; and he procured a preliminary injunction forbid-

ing the defendants from asserting their alleged ownership by suit in court, or in any other way, pending the principal suit; but he was finally beaten, the court determining that the property belonged to the defendants, and not to the plaintiff. In the meantime, while the defendants' hands were tied, the plaintiff carried off the property, destroyed its identity, and disposed of and converted its proceeds to his own use; and the question is what damages the defendants have suffered in consequence of this proceeding of the plaintiff. The object, and the effect of the injunction manifestly was to allow the plaintiff to carry off and dispose of the property, while the defendants, who were, as the event has shown, its owners, were precluded from doing anything whatever in court or out of court, to protect themselves in its possession. *Prima facie*, the value of the property which the defendants have lost, was the measure of the defendants' damages. If the property had remained specifically the same during the litigation, and at its conclusion had been within the defendants' reach, the damages probably would have been such as resulted from their being deprived of its use *pendente lite*, and from any depreciation in value. But under the existing facts it is the same thing as though it had been destroyed, while the owners were prevented from extending their hands for its preservation. The plaintiff's argument is, that the loss was not occasioned by the injunction, but by the tortious act of the plaintiff and his assistant, unconnected with that process. This is too narrow a view of the question. If it had been carried off and converted by a stranger while the owners were prohibited from doing anything to protect it, the persons who restrained them ought to make recompense for the loss. *A fortiori*, he should make compensation when he himself carried it off and converted it during the restraint which he had procured to be imposed. The efficient cause of the loss was the inability of the defendants, caused by the injunction, to take care of and preserve that

which was their own.   The argument which seeks to turn the defendants over to their remedy against Smith Barton, who aided the plaintiff in carrying off the logs, is equally ungracious and unfounded.   That person would no doubt be considered a co-trespasser with the plaintiff, and would be liable to an action.   But whether it would be fruitful in producing compensation or not, no one can say.   It was not shown that he was pecuniarily responsible, and it may be that a judgment against him would be as valueless as one against the plaintiff.   Before any consideration could be attached to the remedy against him, the plaintiff should have shown that he was able to respond for the consequences of the act which the plaintiff had, by means of the injunction, and by employing him in removing the logs, enabled him to perform.   I am for affirming the order appealed from.

HOGEBOOM, J.   This case presents the question of the proper damages to be allowed a party who is restrained by an injunction, proven by the event of the suit to have been improperly awarded.   The plaintiff, claiming an equitable right to certain timber on lands in possession of the defendants, commenced this action to compel the defendants to release to him said timber with the right of removal, and to obtain an injunction to restrain the defendants: 1st. From cutting, drawing, taking or interfering with such timber; 2d. From prosecuting Smith Barton, an employee of the plaintiff, on account of such timber or on account of cutting, drawing, taking or using the same; 3d. From doing any act to prevent or hinder the plaintiff or his agents from removing said timber and using the same.   He procured an *ex parte* injunction in accordance with this prayer in the complaint, on furnishing an undertaking, executed by Stephen McCoy, that the plaintiff would pay all damages, not exceeding five hundred dollars, which might be sustained by the defendants by reason of said

order, if the court should finally decide that the plaintiff was not entitled thereto. The court did so finally decide— the ultimate judgment in the action being in favor of the defendants—dismissing the plaintiff's complaint with costs. Meanwhile, the defendants obeyed the injunction, and the plaintiff, not being interfered with, cut and removed from the defendants' land timber to the value of four hundred and fifty dollars. After the judgment was perfected, a reference was ordered, on the application of the defendants, to ascertain the damages sustained by the defendants by reason of the injunction. The referee reported the same at $450—that being the value of the logs taken and used by the plaintiff. The plaintiff, on notice, moved at special term to set aside the report: 1st. On the ground that the damages were excessive; 2d. On the ground that the referee had adopted an erroneous principle in assessing the damages; 3d. On the ground that there was no proof to sustain the report. The special term overruled the exceptions to the report and confirmed the referee's report. On appeal, the general term affirmed this decision. From the latter order, the plaintiff appealed to this court. The plaintiff is insolvent. The point now made is, that the damages are merely nominal, and that the damages sustained arose, not by reason of the injunction, but by reason of the tortious act of the plaintiff and his agent, in taking the defendants' timber, for which an action of tort lies against them.

I think the order should be *affirmed*. 1st. The defendants have actually lost, and the plaintiff has actually and improperly obtained the property in question. It turns out to have belonged to the defendants and not to the plaintiff. 2d. By the injunction the defendants were restrained from taking or using their own property, and the plaintiff was impliedly authorized to take the possession of the property, if not to appropriate it to his use. Availing himself of this authority, he has thus taken and

appropriated it, and it is forever lost to the defendants. 3d. No other mode of compensation is open to the defendants, except in the form of damages on account of an injunction inequitably issued. The judgment in the action does not include an award of damages for this property improperly converted by the plaintiff. If it did, I do not see that it would be a bar to this proceeding. No other suit will avail the defendants, for the plaintiff is irresponsible, and the defendants ought not to be subjected to the contingency of possible success in recovering its value from the plaintiff's agent. 4th. The damages in question are occasioned by the injunction. But for the injunction the defendants would not have lost their property. By the injunction the plaintiff was impliedly authorized to take it, subject to the liability for damages in case of failure in the action. The loss which the defendants have sustained, was incurred by compliance with the order of the court. If the defendants had commenced an action, and obtained an injunction restraining the plaintiff from interfering with the property, they would have preserved it, and by reason of success in the suit, relieved themselves from liability under the injunction order. If they had failed in such an action, having in the meanwhile appropriated the property, it is difficult to see why the adverse party could not have assessed his damages under the injunction order and undertaking to the value of the property illegally converted. The liberal rule of damages declared in adjudicated cases in principle sustains the claim of the defendants in this case. (*Coates* v. *Coates*, 1 Duer, 664; *Edwards* v. *Bodine*, 11 Paige, 223; *Corcoran* v. *Judson*, 24 N. Y. 106; *Aldrich* v. *Reynolds*, 1 Barb. Ch. R. 613.)

It is said the damages were not sustained by reason of the injunction, because the plaintiff and his agents would be liable to an action for an unauthorized conversion of the property. The reasoning is inconsequential. The remedies are in fact cumulative. The injunction was

decided to be a complete protection to the enjoined party from all loss which could by possibility ensue in consequence thereof, so far as the same was occasioned by the act of the *party applying for the injunction, or his agents.* The reference is a summary mode of relief, given by way of substitute for an action, and intended to accomplish all the results of an action on the undertaking. If the action were upon the undertaking, and the complaint should aver the termination of the suit unfavorably to the plaintiff, the appropriation and conversion of the property by the plaintiff, the acquisition of the possession by the plaintiff of the property through and by means of the injunction, it is difficult to see why the loss of the property to the defendants could not be said to be the direct, proximate and necessary result of the injunction order. It matters not whether the injunction conferred upon the plaintiff the right to *appropriate* the property to his use. Assume that it did not. It nevertheless impliedly authorized him to take possession of it, or countenanced him in doing so, inasmuch as it forbade all others to interfere with him in acquiring such possession. In this respect it is somewhat analogous to the bond in an action of replevin, and impliedly imposed upon the defendant the obligation to return the property in the event of an unfavorable termination of the suit. Having taken possession, it is lost to the defendants through his wrong or his negligence. This is the very result against which the injunction was designed to protect the party. It may possibly be as is said to have been decided in the unreported case of *Lent* v. *McNaughton* (which we have not seen), that the illegal conversion of the property by a *stranger* to the suit does not constitute a proper item of damages on the injunction bond. Perhaps it would be so unless proof was offered reasonably connecting the loss of the property with the granting of the injunction order, or the party obtaining the injunction with the tortfeasor. But this is a case where the

party who obtains the injunction and procures the undertaking is himself guilty of the conversion, accomplished only by the facilities which the injunction put in his way, and the operation of which the defendants were forbidden by the injunction to prevent.

I think there is no sound reason for disturbing the report of the referee, and that the order of the court below should be affirmed.

All the judges concurring, order affirmed.