## CUMMINGS, KENNEY & CO.

### *v.*

## GEORGE MUGGE.

1. INJUNCTION—*measure of damages on dissolution.* On an assessment of damages, after the dissolution of an injunction, the dismissal of the bill and dissolution of the injunction are conclusive evidence that the writ was wrongfully sued out. Where the defendant was enjoined from taking possession of

lumber claimed by him, for about three weeks, the damages recoverable are only such as will cover his injury by the delay caused and the expense necessarily incurred in procuring the dissolution of the injunction.

2. The sureties in the injunction bond are not liable for wrongs suffered by the defendant, during the time the injunction was in force, by unlawful acts of the complainant, other than the improvident act of suing out the writ. They are not liable for the tortious acts of the complainant in taking and converting the property during the pendency of the injunction.

APPEAL from the Circuit Court of Saline county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Messrs. CREBS & CONGER, for the appellants, contended, from the evidence, commented on at length, that during the pendency of the injunction 184,493 feet of appellant's lumber was taken by the appellee, and sold beyond the reach of appellants, in consequence of the wrongful suing out of the writ, for which appellants were entitled to damages at the contract price of $38 per 1000, making for that item $7010.73, and in not allowing this the court erred, and also erred in not allowing anything for the time and traveling expenses of Gravett as agent for appellants.

Appellee wrongfully and without cause, as admitted by dismissing his bill, sued out the writ, and appellants were compelled to send their agent, whose regular wages was $8.50 per day, to take testimony and look after their interests in the case, in all 43 days, making $365.50. The testimony stands uncontradicted that this sum has been paid in consequence of the wrongful suing out of the writ of injunction, and yet the court refused to allow any damages on that account, and only allowed the sum of $500 attorney's fee in the case.

Mr. ANDREW D. DUFF, for the appellee, insisted there was but one single item in the suggestion of damages upon which evidence could properly be heard, and that the attorneys' fee, for which the court allowed $500.

Under the statute the expenses, etc., of the party can not be allowed, nor extravagant attorney's fees. *Collins et al.* v.

*Sinclair*, 51 Ill. 350; *Town of Tamaroa* v. *S. M. N. U.* 54 id. 334.

The bill of exceptions and record wholly fail to show this court that it contains *all* the evidence heard by the court below, and the only question before the court is whether the finding of the court below is in conformity with the evidence heard by it. This court will not review the evidence unless the bill of exceptions upon its face purports to set forth all the evidence. *Webster* v. *Enfield*, 5 Gilm. 298; *Clark* v. *Willis*, 16 Ill. 61; *McCormick* v. *Gray*, id. 138; *Esty* v. *Grant*, 55 id. 341; *Rowan* v. *Dosh*, 4 Scam. 460; *Bates* v. *Bulkley*, 2 Gilm. 389.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

On the 30th day of January, 1874, George Mugge, the appellee, filed a bill in chancery in the circuit court of Gallatin county, against Cummings, Kenney & Co., appellants, charging that complainant, who resided in Shawneetown, was the owner of about 500,000 feet of black walnut lumber, worth about $15,000, stacked on the bank of the Wabash river at a point about 18 miles from Shawneetown, and that defendants, by their agent, one Gravett, were about to seize and take away the lumber, claiming, contrary to the truth, that it was then their property, (setting out the alleged circumstances under which the alleged false claim of property was set up by the appellants.) It was also charged in the bill that the location of the lumber in question was such that the same could easily be removed with boats and barges before the aid of the law could be invoked, and stating that appellants were residents of Massachusetts, and that their agent, Gravett, was of doubtful solvency. The prayer of the bill was for an injunction restraining appellants, their agents, servants, etc., from removing or in any manner intermeddling with said 500,000 feet of lumber, and for other relief. This bill was verified by the oath of appellee. On application to the judge of the circuit court on the same day, an order for the issue

of the writ of injunction was made upon the execution of a bond, and on the same day the bond with sureties was given and the writ issued.

On the 24th of February, 1874, on motion of appellants, the injunction was dissolved by order of the circuit court made at chambers.

Thereupon appellants filed their suggestion of damages and presented testimony to prove the same, and moved the court for an allowance of the same.

This claim for damages embraced—

| | |
|---|---:|
| Alleged value of 200,000 ft. of lumber, | $8400 |
| Wages of agent, | 153 |
| Wages of watchman, | 25 |
| Cost of telegrams, | 60 |
| Traveling expenses, | 49 |
| "        " | 18 |
| Interest on value of lumber, | 70 |
| Attorney's fees, | 1000 |
| Total, | $9721 |

On the 26th of May, 1874, complainant, in open court, by leave of court, dismissed his bill without prejudice and at his costs, but the court retained the case for the assessment of appellants' damages.

On June 4, 1874, after the bill was dismissed, appellants filed an answer.

On June 14, 1874, on application of appellants, the venue was changed to Saline county.

In their answer appellants aver, that of the lumber so on the bank of the river when the bill was filed, some 150,000 to 200,000 feet was the property of appellants, worth from $6000 to $8000—and say that Mugge was and is of doubtful solvency, —and that on the 28th of January, 1874, Mugge having taken possession of appellants' lumber, they sued out a writ of replevin for said lumber, and placed the same in the hands of the sheriff to execute, and that the sheriff on that day

took possession of said lumber, and afterwards and on the 30th of January, 1874, while the lumber was so in the possession of the sheriff, the injunction in this case was issued.

The answer further says, that since the issuing of the writ of injunction, the appellee has taken possession of said lumber and removed it out of this State, and to parts unknown.

On the suggestion of damages, proofs were taken and such proceedings had, from time to time, that at the May term, 1876, the matter was heard by the circuit court of Saline county, and appellants' damages assessed at the sum of $500, and judgment was entered against the appellee for such damages and for costs.

Appellants bring the record here, and seek a reversal of this judgment upon the ground that the damages are not so large as they had a lawful right to have assessed.

Appellants, by their counsel, claim that the proofs taken show that the lumber in question was their property, and that while they were restrained by the injunction from meddling with the same, appellee wrongfully took and disposed of the same to his own use, and that the necessary expense of collecting and presenting this proof upon the assessment of damages was large; and counsel insist that appellants were entitled by law to have the value of the lumber and these expenses included in the assessment of damages.

This position can not be sustained. The service of the writ of injunction in no way authorized or caused the wrongful act of appellee, in taking and converting the property. The dismissal of the bill and the dissolution of the injunction were conclusive that the injunction was wrongfully sued out. The only question on the assessment of damages was, (assuming the appellee to have been all wrong in suing out the injunction) to what extent were appellants injured by being delayed some three weeks in taking and caring for the lumber and in procuring a dissolution of the injunction. Wrongs suffered during that time by unlawful acts of appellee, other than the improvident act of suing out the injunction, consti-

tute no part of the damages caused by the injunction. · The sureties who joined in the injunction bond did not thereby make themselves liable for damages resulting from any wrongful acts of appellee, which he had done or might· thereafter do, save damages which naturally resulted from the legal effect of the writ of injunction.

The decree of the circuit court must be affirmed.

*Decree affirmed.*