[S. F. No. 1760.   Department Two.—June 14, 1901.]

# SAN JOSÉ FRUIT PACKING COMPANY, Respondent, v. FRANCIS CUTTING, Appellant.

Action upon Injunction Bond—Damages—Loss of Profits on Contract—Written Contract for Current Season—Continuous Oral Contract—Failure of Proof—Error. — Where a corporation suing upon an injunction bond had been restrained by the injunction from using a machine for heading tin cans, and claimed damages for loss of profits on a written contract with another company for the current year, and on an indefinite oral contract claimed to have continued in the following year while the injunction was pending, and the evidence showed that the season of the current year ended about the time of the issuance of the injunction, and failed to establish the oral contract claimed, it was error for the court to admit, and refuse to strike out, evidence of conversations in support of the oral contract, which referred only to the current season covered by the written contract, and to give instructions on the theory that an indefinite oral contract was established, and not to confine the question of damages to loss of profits, if any, on the written contract.

Id.—Damages upon Written Contract not Shown—Delivery—Purchase of Cans. — Where the written contract for the current season did not definitely determine the number of cans required to be furnished thereunder, and there was no complaint of default under the contract, and no evidence that plaintiff did not perform the contract, or that more cans were required of plaintiff than it had manufactured for the current season, by the use of the machine prior to the injunction, the facts that some of the cans so manufactured were delivered subsequent to the injunction, and that other cans were purchased by plaintiff from others to carry out the contract, which do not appear to have been demanded from the plaintiff, are immaterial; and no damages accruing under the contract are established.

Id. — Increased Cost of Manufacturing not Clearly Shown. — Damages arising from the increased cost of manufacturing cans without the use of the machine, the use of which was enjoined, are not clearly established, where it appears that the use of the machine was confined to a particular class of cans, which was only a part of the total amount of cans used, and where the evidence was vague and uncertain as to the increased cost of manufacture by reason of disuse of the machine.

Id. — Measure of Damages — Reasonable Certainty. — In an action upon an injunction bond, the plaintiff can recover only such direct proximate damages as he can establish with reasonable certainty and accuracy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Olney & Olney, for Appellant.

The plaintiff has not established any proximate damages with reasonable certainty, and the judgment should be reversed on that ground. (High on Injunctions, secs. 1663 et seq.; Sedgwick on Damages, secs. 170, 171; *Parke* v. *Frank*, 75 Cal. 369; *Muller* v. *Fern*, 35 Iowa, 420; *Hubbard etc. Co.* v. *Minneapolis Wood Co.*, 47 Minn. 393; *Ellerbe* v. *Minor*, 49 La Ann. 863; *Watts* v. *Norfolk etc. Ry. Co.*, 39 W. Va. 197;[1] *Western Union Tel. Co.* v. *Brown*, 62 Tex. 536; *Town of Salida* v. *McKinna*, 16 Col. 523; *Watt* v. *Nevada Central R. R. Co.*, 23 Nev. 154.[2])

Chickering, Thomas & Gregory, for Respondent.

The evidence establishes both a written and an oral contract, under which profits were lost, by reason of the injunction, which loss of profits falls within the proper rule of damages. (*Lambert* v. *Haskell*, 80 Cal. 616, 618, and cases cited.)

THE COURT.—The plaintiff, before and after September 19, 1893, was engaged in the business of canning fruit, and of manufacturing metal cans for its own use and for sale, and owned and operated in its business a machine known as the "Wheaton header," used for putting heads on cans. At the date named, in a suit against plaintiff then pending, an injunction was issued, restraining plaintiff from using this machine, which injunction continued in force until April 17, 1896, when it was dissolved. The defendant here was surety on the injunction bond, and the suit was brought against him for damages suffered by plaintiff by reason of the injunction. The plaintiff recovered a verdict of fifteen thousand dollars, for which amount, and costs, judgment was entered. The appeal is from the judgment and from an order denying a new trial.

All claims for damages against the defendant were waived by plaintiff's counsel, "except (first) for the increased cost of

---

[1] 45 Am. St. Rep. 894.    [2] 62 Am. St. Rep. 772, and note.

manufacturing tin cans, caused, as it was claimed, by the issuance of the injunction, and (second) for the loss of profits incurred by the plaintiff in its contract with the Sacramento Packing and Drying Company."

The latter item refers, apparently, to a single contract with the Sacramento company; but there seems to have been two contracts relied on by plaintiff, — the one, in writing, evidenced by the written correspondence between Wright, the plaintiff's manager, and Bentley, the manager of the Sacramento company; the other resting on the testimony of Wright. The former was for the current season only. The latter, it is claimed, was for an indefinite term of years. The terms of this last alleged contract rest upon certain testimony given by Wright on the witness-stand, as to conversations between him and Bentley, the manager of the Sacramento company. The claim of plaintiff is, that it was entitled to damages for disability, caused by the injunction, to perform the written contract for the current season (1893), and also for its continued disability in the following year while the injunction was pending. The claim of defendant is, that there was no evidence to support either contention, and that the court, with reference to each, erred in its instruction and other rulings.

As to the supposed oral contract, we think the court erred in admitting, and not refusing to strike out, the testimony of Wright with regard thereto. The letters of the Sacramento company of March 3 and March 7, 1893, show affirmatively that the conversations between Wright and Bentley, and the arrangement resulting, related exclusively to the current season. And without this it is clear that, as stated by Wright, the arrangement was a mere offer, to be accepted or rejected by the other party. But, independently of this, the conversations must be construed with reference to the previous letter of Wright, and regarded as relating only to the current season. The instruction of the court, on this point, was therefore erroneous. The instruction should have been limited in its application to damages accruing from plaintiff's inability to comply with its written contract.

These errors would necessitate a reversal, but there are others that must be touched on, as bearing on the future proceedings of the case.

1. We find no evidence in the record showing, or tending to show, that plaintiff was unable to supply, or that it did not

supply, the Sacramento company with cans for the season of 1893, as required by its contract; and the case, in fact, seems to have been tried on the opposite theory. The season of 1893, as appears from the testimony of Wright, ended with the latter part of September, — that is, about the time of the issuance of the injunction. Prior to that time the plaintiff had furnished to the Sacramento company "nearly two million" cans, or nearly the whole amount used by it. After the injunction was served, "forty or fifty or sixty thousand" cans were furnished, which were purchased from others, to carry out the contract. With regard, indeed, to the actual number of cans delivered before the injunction was served, the witness corrects his testimony, saying that by reference to the books of the concern he found that something less than one million cans had been delivered. But this refers merely to the time of delivery, and is not inconsistent with the fact before stated by him, that nearly two million cans, presumably of his own manufacture, were delivered either before or after the service of the injunction, before the delivery of the purchased cans. But, giving this statement all the credit claimed for it by the plaintiff, there is no evidence that more cans were required of plaintiff than were actually delivered, or that it had in fact failed of full performance. The contract does not definitely determine the quantity required, and in the later correspondence, or in the testimony, there is no complaint or reference to default. Nor can any inference adverse to the defendant be drawn from Bentley's testimony to the effect that the Sacramento company used two million cans in the year 1893. From the context, the most natural construction of his testimony would be that it got these from the plaintiff. But assuming the contrary, it cannot be inferred from what he says that it demanded that amount from the plaintiff. It may, by preference, have purchased from others.

2. As to whether or not the evidence would have justified a verdict on account of the increased cost of manufacturing tin cans used by the plaintiff itself, and caused by the issuance of the injunction, it is proper to make some observations. The defendant does not make any objection to the validity of the bond, or to his liability thereon for whatever damages plaintiff can legally show it suffered by reason of the injunction. It is undoubtedly the law that in an action of this character a plaintiff can recover only such direct proximate

damages as he can establish with reasonable certainty and accuracy; and the court so instructed the jury. The defendant contends, and we think correctly, that the evidence in the case failed to fulfill the requirements of this instruction. On this point, the sole question was as to the increase in cost of heading occasioned by the disuse of the Wheaton header, and the number of cans actually manufactured, which were of the class of 2½-pound cans. For the header was used only in the manufacture of these, and there is no evidence that if the injunction had not been issued, it would have been used for any others. The *data* required for this calculation were the cost of making cans with the header, the cost without it, and the number of cans manufactured without it. It appears from the evidence of plaintiff's main witness that all these items could have been shown accurately by an itemized statement from the books of plaintiff. It is not necessary to determine whether or not the failure of plaintiff to introduce its books raised that suspicion against the plaintiff's case which is indicated by subdivisions 5 and 6 of section 1963 of the Code of Civil Procedure; but it may be considered as emphasizing the uncertain, even contradictory, character of the oral testimony given by plaintiff's main witness as to this matter. Thus, for example, the number of 2½-pound cans—of which an exact account could have been given from the books—is given only as being "about three fourths of the total amount used"; and with reference to the total, in one place it is said that the number of cans used before the injunction was "from five to seven million" per year; that "in 1894 . . . it dropped about three million cans,"—thus making the amount used from two to four millions; and in another part of his testimony the witness says that "in 1894 we ran off about ten thousand cases less"; and with reference to the increased cost of manufacture, in one place it is said, in effect, that this was "about a dollar a thousand," and elsewhere, it is said "three dollars per thousand." This evidence, we think, was entirely too vague and uncertain to justify a verdict under the rule as above stated.

The judgment and order appealed from are reversed.