Argued August 10, decided October 18, 1910. Rehearing denied February 7, 1911.

## GOBBI v. DILEO.

[111 Pac. 49: 113 Pac. 57.]

INJUNCTION — TEMPORARY INJUNCTION — EFFECT — "INTERLOCUTORY INJUNCTION."

1. Under Section 417, B. & C. Comp., defining an injunction as an order requiring a defendant to refrain from a particular act, an interlocutory injunction operates *in personam,* and does not determine the merits of the case or the rights of the parties, and does not change the possession of real or personal property, the title to which is in dispute, but it merely seeks to preserve the *status quo* pending the trial.

INJUNCTION—TEMPORARY INJUNCTION—EFFECT.

2. An interlocutory injunction which restrains a defendant from cutting, removing, or disposing of wood on land in his possession, the title to which is in dispute, does not transfer the title or possession of the timber; and the bond conditioned to pay damages accruing by reason of the injunction, if wrongful, does not cover a loss of timber sustained by the removal thereof by strangers pending the suit.

INJUNCTION—TEMPORARY INJUNCTION—BOND—LIABILITY OF SURETIES.

3. The sureties on a temporary injunction bond which recites that the injunction has been granted may rely on the condition of the injunction that it shall be operative only after the filing of the bond.

INJUNCTION—TEMPORARY INJUNCTION—BOND—LIABILITY OF SURETIES.

4. An injunctional order was by its terms operative only after the filing of a bond. A bond was subsequently filed. It did not appear that the sheriff ever had the order in his hands. Prior to the filing of the bond, persons representing themselves to be a deputy sheriff and the plaintiff in the suit, respectively, delivered to defendant a copy of the order. *Held* not to show the issuance or service of the order, and defendant, on obtaining a dissolution of the injunction, could not recover on the bond the damages sustained.

EXCEPTIONS, BILL OF—MOTION FOR NONSUIT—DENIAL—TRANSCRIPT OF
    REPORTER'S NOTES.
5. A reporter's transcript of the whole evidence taken prior to the
denial of a motion for a nonsuit is a proper bill of exceptions to present
the court's alleged error in denying a motion for review on appeal.

EXCEPTIONS, BILL OF—CONTENTS—EXHIBITS—LAWS OF FOREIGN STATE
    —CORPORATION.
6. Where a volume of the statutes of a foreign state was offered in
evidence to introduce ten pages thereof, a bill of exceptions was not
defective for failure to contain such volume.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE EAKIN.

This is an action upon an injunction bond, upon which defendant Dileo is principal, and defendant, the United States Fidelity & Guarantee Company, is surety, filed in a suit brought by Dileo against this plaintiff Gobbi *et al.* in the superior court of the State of Washington for the county of Wahkiakum.

The complaint in the suit, which was filed November 13, 1903, alleges facts showing that defendants therein, Gobbi *et al.*, by fraud, acquired the title to certain lands in that county from Dileo, and have cut wood, viz., 500 cords, from the timber thereon, and placed the same upon the bank of the Columbia River for removal from the land; that they threaten, and are about to remove the same, and, unless restrained, will do so, and prays that the defendants be required to reconvey such land to plaintiff, and that defendants be restrained from removing or disposing of said wood or timber pending the suit. Thereafter, on November 17, 1903, the judge of the court signed an interlocutory injunction, directed to defendants, in which it is recited and ordered that "it satisfactorily appearing therefrom that it is a proper case for an injunction and that sufficient grounds exist therefor, and upon the filing and approval of the necessary undertaking in the sum of $500, it is ordered by me, the judge of said superior court, that, until further order in the premises, you and each of you, the said defendants

herein, * * do absolutely desist and refrain from cutting, removing, disposing, or in any manner incumbering any or all timber, cordwood now in or upon certain land. * *" On November 20, 1903, defendants were about to remove the wood when they received some notice or information that an injunction had been issued in the suit, and they thereafter desisted from further removal of the wood. On the 3d day of December, 1903, plaintiff in said suit filed the undertaking sued on herein in the sum of $500 in compliance with the order.

The defendants Gobbi *et al.* answered the complaint in the suit, denying the allegations thereof, and alleging, affirmatively, that they are the owners of the land, and have had exclusive possession of it during all of the time since the execution of the deed, and have been exercising acts of ownership over it, and did cut wood thereon, as such owners.

The suit was tried by the court, who found that the defendants Gobbi *et al.* fraudulently procured from plaintiff a deed to such land, that plaintiff had been indebted to defendants in sums amounting to $46, and that defendants had agreed with plaintiff to cut and sell cordwood on the land to repay such amount, and that defendants have cut and taken large quantities of wood and more than enough to repay them. A decree was rendered thereon that plaintiff is the owner of the land, and that defendants reconvey it to him, and further adjudged that defendants are the owners of the cordwood cut by them now on the land. It is alleged in the complaint in this action that the wood, viz., 171 cords, has all been removed by some one unknown to plaintiff, that the wood was worth $2.50 per cord, that the other defendants in the injunction suit have assigned their interest in the claim for damages upon the bond to this plaintiff Gobbi, and plaintiff claims damages for the loss of the wood and $200 additional damages, the amount paid for hire of a

scow upon which the wood was being loaded when stopped by the notice of the injunction on November 20, 1903, and prays for judgment for $500, the amount specified in the bond.   Plaintiff recovered a verdict and judgment thereon against defendant surety company in the sum of $382, and defendants appeal.          REVERSED.

For appellant there was a brief with oral arguments by *Mr. Albert B. Ferrera* and *Mr. John Ditchburn.*

For respondent there was a brief and an oral argument by *Mr. Albert H. Tanner.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Plaintiff has filed a motion to affirm the judgment for the reason that no bill of exceptions had been filed within the meaning of the statute and rulings of the court. By order of the court, the original bill of exceptions is certified to this court in lieu of a copy which appears to be only a transcript of the court reporter's shorthand notes of the trial.   It is not in any sense a bill of exceptions as to any errors relied on other than the motion for a directed verdict.   See *Bigelow* v. *Columbia Gold Mining Co.*, 54 Or. 452 (103 Pac. 56, 1007). And this transcript is not certified or identified as containing all the evidence submitted prior to the motion. But, considering it as such, the brief of plaintiff admitting it to be the stenographer's notes extended, there is but one question before us, viz.:   Did the plaintiff prove a cause sufficient to be submitted to the jury?   The first question suggested is:   In whose possession and at whose risk was the wood after the alleged service of the injunction?   An interlocutory injunction does not determine the merits of the case or the rights of the parties, but merely seeks to preserve the *status quo* of the property pending the trial, and will not change its status. High, Injunctions, §§ 5, 5a.   The writ has a purely per-

sonal effect—a judicial process operating in *personam*. Section 417, B. & C. Comp.; 1 Spelling, Ex. Rem. § 1.

2. And the order signed in this case only restrained defendants from doing certain acts, viz., that they desist from cutting, removing, or disposing of the wood. It could not have the effect to transfer the title or possession of the wood to plaintiff. As a rule equity will not interfere by interlocutory injunction to change the possession of real property, the title being in dispute. High, Injunction, § 355. Nor is it a proper remedy for recovering possession of personal property: *San Antonio Water Co.* v. *Bodenhamer,* 133 Cal. 248, 251 (65 Pac. 471); *Toledo A. A. & N. Mich. Ry.* v. *Detroit L. & N. R. R.,* 61 Mich. 9, 11 (27 N. W. 715); *Welsch* v. *Belleville Sav. Bank,* 94 Ill. 191. And the possession remained after the alleged service of the writ where it was at that time unaffected by the writ. The wood was cut from the land, the title to which was in dispute, and practically conceded to be in the possession of defendant in the writ, and the wood remained on the land: *Barton* v. *Fisk,* 30 N. Y. 166, cited by plaintiff, is not in point, as the effect of the injunction there was to change the possession of the property from defendant to plaintiff, and the same is true in the case of *Alexander* v. *Colcord,* 85 Ill. 323. The distinction between those cases and the one before us is maintained in Sutherland, Damages (3 ed.) §§ 527, 528. Therefore the injunction, if issued and served, did not operate to deprive defendants in the suit of the possession of either the land or the wood. The obligation of the undertaking is that the sureties shall pay to defendant all damages and costs which may accrue by reason of the injunction if the same be wrongful. Therefore the damages, for which the sureties are liable, are such as defendants suffered by reason of being prevented from removing or selling the wood. The wood

still remained in defendant's possession, and, if removed by others, it was not plaintiff's fault.

3. This only disposes of the damages for the value of the wood. There still remains the claim for damages for the loss of the hire of the scow which was there to take the wood on November 20th. The complaint makes no contention that there was either liability upon the bond or damage incurred prior to the execution of the bond which is alleged to be December 4th. The allegation is "that upon the issuance of said restraining order and the filing of said undertaking, to wit, December 4, 1903, * * the defendants * * were prohibited and prevented from taking * * said cordwood, and were on account thereof compelled to and did at that time, to wit, on or about December 4, 1903, leave 171 cords thereof. * * That said restraining order was served on defendants therein on the 4th day of December, 1903, by the sheriff of Wahkiakum County, Washington." And it is further alleged that the scow had been procured prior to the issuance of the restraining order, and was being loaded with the wood at the time the restraining order was served on the defendants as aforesaid, to wit, on or about December 4, 1903. These allegations are not substantiated by the proof. The expense for the scow was incurred on November 20, 1903. Neither is there anything in the record to indicate that the writ was ever issued. The language of the order, in effect, only authorizes its issue after the bond is filed. It was filed December 4, 1903, after which the order might have been issued. The bond recites that the injunction has been granted, and the sureites have a right to rely upon its condition that it shall be operative only after the bond is filed.

4. The case cited by counsel for plaintiff to the effect that the bond will have a retroactive effect, viz., *Meyers*

v. *Block,* 120 U. S. 206 (7 Sup. Ct. 525: 30 L. Ed. 642), is not in point, that case being decided upon the fact that the undertaking was given with knowledge that the writ had been served and in terms was retroactive. However, the record fails to show that the order was issued or served. It is stipulated that the sheriff made no return of service on it, and it does not appear that it was ever in his hands. Therefore, what took place on November 20, 1903, when Capt. Hagstrom was loading the wood on the bank of the river, when he says two men came there, one representing himself to be a deputy sheriff and the other the plaintiff in the suit, Dileo, and delivered to him a copy of the injunction order in the suit, does not establish that the order had been issued nor that such order was served. Therefore the plaintiff failed to prove a cause sufficient to be submitted to a jury.

The judgment is reversed, and the cause remanded for a new trial.                    REVERSED.

---

Decided February 7, 1911.

## ON PETITION FOR REHEARING.

[113 Pac. 57.]

Opinion by MR. CHIEF JUSTICE EAKIN.

5. It is contended by plaintiff that this court has erred in recognizing the transcript of the reporter's notes of the trial as sufficient to enable it to review the action of the lower court in denying the motion for a nonsuit, for the reasons, first, that it is not a bill of exceptions; and, second, that it does not contain exhibit No. 6.

Counsel for plaintiff, in the brief, contends that a transcript of the reporter's notes of the trial, even when signed by the judge, is not a bill of exceptions, within the statute and the decision of this court in *Nosler* v.

*Coos Bay Nav. Co.,* 40 Or. 305 (63 Pac. 1050: 64 Pac. 855), and urges that 'the case of *Bigelow* v. *Columbia Gold Min. Co.,* 54 Or. 452 (103 Pac. 56, 1007), which holds that the transcript of the whole evidence given prior to a motion for nonsuit is a proper bill of exceptions to present the alleged error of the court in denying the motion, in effect overrules *Eaton* v. *O. R. & N. Co.,* 22 Or. 497 (30 Pac. 311). But counsel misconceives the effect of that case. The principle announced in *Bigelow* v. *Columbia Gold Min. Co.,* 54 Or. 452 (103 Pac. 56, 1007), was decided in *Johnston* v. *O. S. L. Ry. Co.,* 23 Or. 94 (31 Pac. 283), in which *Eaton* v. *O. R. & N. Co.* is distinguished, and this case has been followed ever since. The plaintiff's brief expressly stated that the bill of exceptions is a transcript of the reporter's notes, and it does not question its sufficiency or identification.

6. Exhibit No. 6 is volume 2 of Hill's Annotated Codes and Statutes of Washington, which was offered in evidence for the purpose of introducing 10 pages thereof. We do not deem its absence from the record sufficient ground to preclude a consideration of the motion for nonsuit, as it is a duplicate of an authoritative book of which there are great numbers, there being one in the State library; and it would be sacrifice of substance to mere form to hold that the court would refuse to consider the statute, when we have it at hand, simply because a different copy was introduced at the trial.

We also adhere to our holding that there is no evidence in the record that the restraining order was ever issued or served. Although the motion for nonsuit is not very specific, it questions the validity of the injunction order.

The motion is denied.

REVERSED: REHEARING DENIED.