No. 28,619.

THE GARDEN CITY COMPANY, *Appellee,* v. THE DETROIT FIDELITY AND SURETY COMPANY, *Appellant.*

(278 Pac. 755.)

Opinion filed July 6, 1929.

*Edgar Foster, Horace J. Foster,* both of Garden City, *Charles S. Dunn* and *Charles L. Powell,* both of Chicago, Ill., for the appellant.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action was a sequel to that of *The Continental & C. T. & S. Bank v. Garden City Co.,* 123 Kan. 659, 256 Pac. 983, where the ownership of an electric transmission line located on a public highway running north from Garden City into Scott county was in dispute.

The line had been constructed by a predecessor in title of the Garden City Company for the purpose of delivering electrical power

for the operation of irrigation pumps, but the cost had been found to be prohibitive, and when the line was partially wrecked by a gale in 1922 it was not rebuilt. The storm broke a large number of poles and in places the wires lay on the ground by the roadside. Eventually, in 1926, the Garden City Company decided to remove the line entirely and use it elsewhere, but the Continental and Commercial Trust and Savings Bank claimed a mortgage lien on the line and brought suit to prevent its removal. The bank was defeated in the trial court and appealed to this court, and upon its motion and on the giving of a bond, this court, on October 19, 1926, issued its injunctive order—

"That the appellees herein, and each and all of them together with their agents, officers, servants and employees, being enjoined and restrained during the pendency of this appeal from tearing down, dismantling, junking, or removing the transmission line in controversy, in this action, or any part thereof, from its present location, or from removing, taking away, or appropriating to their own use, elsewhere any part or portion of the material of which the same is or was constructed, or from in any way interfering with, harming, altering, or changing the said transmission line, or any of the appurtenances thereunto belonging so that the value of the security covered by appellants' deed of trust be in any way lessened, decreased, or diminished."

The bond provided—

"Now, therefore, we, Continental Trust and Savings Bank and William F. Kopf, as trustee, as principal, and the Detroit Fidelity and Surety Company, as surety, hereby undertakes in the sum of $5,000 (five thousand dollars) that the said appellants shall pay the said appellees any damages that they may sustain by reason of the issuing of said order if it shall be finally determined that said injunction ought not to be granted."

This injunction was in effect until the judgment was affirmed June 11, 1927, during which period the line was repeatedly meddled with by thieves, and considerable portions of it were stolen and carried away. At the expenditure of money and effort some of the stolen wire was recovered by the Garden City Company. To recoup itself for the loss and damage occasioned by these larcenies this action was begun against the surety on the injunction bond. The pertinent facts and legal questions were developed by the pleadings. The evidence did not develop much conflict of testimony. Plaintiff's evidence tended to show thefts of wires, poles, insulators and the like, of the value of $1,641.25, and expenses incurred in "running down the various thieves and recovering part of the loot," amounting to $59.55. (We were advised in the oral argument that seven of these thieves had been apprehended and convicted and are now

in the penitentiary—a felicitous incident of which such thorough-going advocates of law enforcement as President Hoover and Chief Justice Taft should be apprised.)

The jury returned a verdict for plaintiff in the sum of $800 and answered two special questions:

"Q. 1. If you award plaintiff damages in any amount state what act or acts of the defendant surety company caused the persons who removed or damaged portions of the transmission line, poles, wires and equipment to do so. A. By not properly protecting the property while under the jurisdiction of the court.

"Q. 2. If you find for the plaintiff, what amount do you credit to defendant for property and materials recovered by plaintiff after the thefts and damage herein complained of? A. $63.03."

Judgment was entered accordingly and defendant appeals, contending that the loss and damage caused by theft of the property during the time the injunction was in effect were not within the terms of the injunction bond. The argument is advanced that the injunctive order restraining the plaintiff "from tearing down, dismantling, junking or moving the transmission line" did not change the status of the line in any way, and that the order of court only preserved the property in the same condition it had been for more than three years prior to the issuance of the injunction. To support this argument the appellant invokes the well-known rule of law that only such damages are recoverable as are the natural and proximate result of the injunction during the time it was in force. It is also argued with considerable plausibility that the appellant bondsman ought not to be held liable for the wrongdoing of third parties—the thieves who pillaged the line—and that the possibility of loss and damage to the line by theft was no greater or different while the injunction was in force than before its issue or after its dissolution.

On the other hand, the nature, situation and condition of the property must be considered. The transmission line for the most part was situated on the public road. It was not practical to safeguard it from thieves except by doing what the plaintiff had set about—taking up the line and removing it to a place of security until needed for use elsewhere. If the line had been on private property it might have been practicable to have prevented trespassers from coming on the premises to meddle with it. On the public road, however, the line in its partially wrecked condition, and composed as it was of highly valuable materials, was a standing temptation

to persons of thievish disposition, and the longer it lay in disrepair the stronger was its invitation to such people to steal parts of it. Moreover, it cannot be denied that the injunction completely tied the plaintiff's hands from doing the only practicable thing which could or would have prevented its spoliation by thieves. True, the injunction did not deprive the plaintiff of actual possession of the line, but it did deprive it for the time being of the usual attributes of possession, by which plaintiff could have prevented the loss and damage which it sustained. It effectively and completely prevented plaintiff from the exercise of the necessary dominion over the property to protect it from theft. The only practicable way to prevent thefts from a partly wrecked power line strung along a public road, composed as it was of costly and valuable wires, insulators and miscellaneous articles incidental thereto, unless it had been worth while to repair it and put it back into service, was to roll it up and take it away to a place of safety. The efficient proximate cause of the loss was the inability of the plaintiff, by reason of its hands being tied by the injunction, to do what was needful to secure it from spoliation.

Some cases pro and con are called to our attention as being somewhat analogous to the one before us. In *Gobbi v. Dileo*, 58 Ore. 14, 34 L. R. A., n. s., 951, the action was on an injunction bond to secure the plaintiff against damages because of his being temporarily restrained from cutting, removing or disposing of certain cordwood, and during the time the temporary restraining order was in force 171 cords were stolen. The court held that there was no liability on the bond. In the opinion it was said:

"The first question suggested is, In whose possession and at whose risk was the wood after the alleged service of the injunction? . . . And the order signed in this case only restrained defendants from doing certain acts, viz.: that they desist from cutting, removing or disposing of the wood. It could not have the effect to transfer the title or possession of the wood to plaintiff. . . . And the possession remained after the alleged service of the writ where it was at that time, unaffected by the writ. The wood was cut from the land, the title to which was in dispute, and practically conceded to be in the possession of defendant in the writ, and the wood remained on the land. *Barton v. Fisk*, 30 N. Y. 156, cited by plaintiff, is not in point, as the effect of the injunction there was to change the possession of the property from defendant to plaintiff, and the same is true in the case of· *Alexander v. Colcord*, 85 Ill. 323. . . . The wood still remained in defendant's possession, and, if removed by others, it was not plaintiff's fault." (pp. 17, 18.)

In *Burley T. G. Co-Op. Ass'n v. Pennebaker Home*, 221 Ky. 718,

a similar action on an injunction bond for the theft of 2,000 pounds of tobacco while plaintiff was restrained from selling it was unsuccessful, but in that case, as in the Gobbi-Dileo case, the injunction only restrained the plaintiff from disposing of the property. In neither of these cases did the injunctive order change the possession of the property or restrict the possessors' dominion over the cordwood or tobacco except to prevent their sale for the time being. Neither of these cases covers the predicament in which the injunction placed this plaintiff in respect to its ability to protect the transmission line in its storm-wrecked condition, situated as it was on a public highway and much of it lying on the ground by the roadside. In both the above-cited cases there was nothing in the terms of the injunction to hinder the plaintiff from safeguarding the cordwood and the tobacco from theft. Here the literal terms of the injunction had that precise effect.

One of our own recent cases, *Baker v. Craig*, 127 Kan. 811, 817, 275 Pac. 216, among other complicated features, included an action on an injunction bond in which a claim was made for the value of certain well-boring tools which had been stolen while the injunction was in force. Because other features in the case required extended treatment, this particular point was disposed of without discussion by a simple ruling that the injunction bond covered the stolen property.

We conclude that the judgment of the district court was correct, and it is affirmed.

Hopkins and Hutchison, JJ., not sitting.