[Civ. No. 3735. Third Appellate District.—September 20, 1929.]

WILLIAM NEIL MOORE et al., Respondents, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

Knight, Boland & Christin for Appellant.

O. C. Parkinson for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment in an action on an indemnity bond for damages resulting from an order temporarily restraining the owners from interfering with the harvesting and marketing of a grape crop.

Respondents are the owners of eleven acres of vineyard land in San Joaquin County, upon which there was growing, in 1926, a crop of grapes. E. G. Potter, as receiver of the Stewart Fruit Company, brought an action to foreclose a chattel mortgage on said crop. A temporary restraining order was granted prohibiting these respondents from interfering with the harvesting and marketing of the

crop by Potter. Upon the granting of this restraining order the appellant executed and filed in the former case an indemnity bond for $1,000 providing that "if the defendants, or either of them, recover judgment in said action, or if it be adjudged that said plaintiff is not entitled to said temporary restraining order, the said plaintiff will pay to said parties enjoined such damages not exceeding the sum of $1,000 and costs as said defendants may sustain *by reason of said temporary restraining order,* if the said Superior Court finally decides that the said plaintiff was not entitled thereto." Thereupon the said Potter picked and marketed a portion of said crop of grapes. Within about a week subsequent to the granting of said restraining order, these respondents employed counsel and moved the court in that action to vacate said restraining order, which motion was granted, and without further proceedings the action was subsequently dismissed by the said Potter. This action for damages for conversion of the crop of grapes, together with costs and counsel fees incurred in obtaining the release of the restraining order, was brought against this appellant. Judgment was rendered in favor of the respondents for the sum of $494.90. The court found that:

"By virtue of the restraining order issued in action No. 20273 in this Superior Court, E. G. Potter of The Stewart Fruit Company upon whose behalf defendant executed and delivered the bond referred to in the foregoing findings was permitted to seize and convert and injure a portion of said crop of grapes of the reasonable value of $365.90, and plaintiffs were restrained from interfering with said seizure, conversion and injury, and by reason of the issuance of said restraining order plaintiffs herein were damaged in said sum of $365.90.

"By reason of the issuance of said restraining order plaintiffs were obliged to incur and pay and did incur and pay reasonable costs of suit in the sum of $29.00 and reasonable attorneys' fees in the sum of $100.00, and were damaged in said sums."

The appellant claims that the surety on the bond is not liable for the reason that the damage resulting from the conversion of the grapes was not "by virtue of said restraining order"; that the record contains no evidence of the market value of the grapes which were taken; that the

record fails to show that the $100 attorneys' fee was incurred solely for services in dissolving the restraining order, and that the costs of suit were not incurred by reason of the restraining order.

 It is argued that the restraining order was not the cause of the conversion of the grapes, but, upon the contrary, that the damage to the crop was the result of the tort of Potter, who alone became liable therefor. Potter, however, was the principal upon the indemnity bond which is the basis of this action. At his instance the owners of the grapes were wrongfully enjoined from interfering with his custody or preventing Potter from "supervising, controlling, packing, cleaning, shipping, disposing of and selling the crop of grapes." In effect, by means of this restraining order, Potter was authorized to retain and dispose of the grapes and the respondents were prevented from exercising any right of ownership over them which might enable them to protect, preserve, harvest or market the crop. While the language of the order does not specifically restrain the picking of the grapes, it recognizes the authority of Potter to handle them, and this is clearly implied for respondents were precluded from handling or marketing the crop. Little aid in preserving the crop would accrue from merely picking the fruit to turn it over to Potter. It would be a strained and unreasonable construction of the foregoing language to hold that the order left any authority in the respondents to control or preserve the crop. Even if the language were uncertain in this respect, the owners were justified in assuming that they were thereby deprived of the right to pick, preserve or market the fruit. If such construction of the language was not unreasonable, the sureties would be liable for damages resulting from a wrongful procuring of the injunction. In 14 Ruling Case Law, page 482, section 184, it is said: "In case an injunction which is wrongfully issued, is framed in ambiguous terms, the defendant therein is entitled to recover such damages as he has sustained in obeying it as he reasonably and in good faith understood it." (1 Joyce on Injunctions, p. 317, sec. 192.)

 It is well-settled law that when an injunction is wrongfully issued, and subsequently dissolved, the party enjoined will be entitled to such damages within the limit of the penalty of the bond as he may have sustained by

reason of the issuing of the injunction. (Sec. 529, Code Civ. Proc.; *Asevado* v. *Orr*, 100 Cal. 293, 299 [34 Pac. 777, 779]; *Rice* v. *Cook*, 92 Cal. 144 [28 Pac. 219].)

■ On motion of the respondents, the restraining order was vacated and an injunction denied. The subsequent dismissal of the action was equivalent to a determination that the applicant was not entitled to an injunction. In the Asevado case, *supra*, it is said: "The voluntary dismissal of the action by the plaintiffs had the same effect as a decision of the court that they were not entitled to the injunction." (*Frahm* v. *Walton*, 130 Cal. 396 [62 Pac. 618]; *Dowling* v. *Polack*, 18 Cal. 625.) ■ It is true that the damage which is recoverable for the wrongful issuing of an injunction is limited to such as appears with reasonable certainty and accuracy to be the actual, necessary and proximate result of the injunction. (*San Jose Fruit Packing Co.* v. *Cutting*, 133 Cal. 237 [65 Pac. 565]; 32 C. J., p. 464, sec. 807; 2 High on Injunctions, 4th ed., p. 1613, sec. 1663; 1 Joyce on Injunctions, p. 312, sec. 190.) The allowance of such damage is controlled by equitable principles and should furnish just and reasonable compensation for the loss sustained. ■ It cannot be logically argued that because the restraining order did not purport to actually transfer title to the grapes, but merely prevented the owners from harvesting and marketing them, that, therefore, the appropriation of the fruit by Potter was a mere tort for which the surety is not liable because the wrongful act was not the direct result of the injunction. The restraining order was the direct cause of preventing the owners from picking, preserving or disposing of their crop. It was the direct cause of preventing them from opposing the appropriation of the crop by Potter. Its effect was negative rather than positive, but the result was the same. The crop was lost to the owners. ■ It is immaterial whether the order resulted in the grapes rotting on the vines, or whether Potter appropriated them to his own use. In either event the result of the restraining order was the loss of the grapes to the owners for the reason that the court had effectively enjoined the respondents from exercising any acts of ownership over the crop. In High on Injunctions, page 1624, section 1673, it is said: "In determining the amount of damages to be allowed upon the dissolution of an injunction

restraining one from exercising acts of ownership . . . damages for the crops which defendant was prevented by the injunction from harvesting may properly be allowed.'' The same section later illustrates the above declaration of law by saying: ''Where a mortgagor obtains an injunction to prevent the mortgagee from selling the premises under a decree of foreclosure, and pending the injunction the mortgagor removes the emblements from the premises, the value of the emblements should be included in the damages awarded to the mortgagee upon dissolution.''

The case of *Barton* v. *Fisk,* 30 N. Y. 166, is quite similar on principle to the case at bar. The plaintiff claimed title to certain timber which was on defendants' land. A controversy over the title arose. Plaintiff brought suit to recover the timber and procured a preliminary injunction prohibiting the defendants from exercising acts of ownership over the timber. The plaintiff was defeated in the action. Pending the trial the plaintiff appropriated the timber to his own use and disposed of it. Chief Justice Denio said: ''This seems to me a very plain case. . . . While the defendants' hands were tied, the plaintiff carried off the property, destroyed its identity, and disposed of and converted its proceeds to his own use. . . . The effect of the injunction manifestly was to allow the plaintiff to carry off and dispose of the property, while the defendants, who were, as the event has shown, its owners, were precluded from doing anything whatever in court or out of court, to protect themselves in its possession. *Prima facie,* the value of the property which the defendants have lost, was the measure of the defendants' damages. . . . Under the existing facts it is the same thing as though it had been destroyed, while the owners were prevented from extending their hands for its preservation. The plaintiff's argument is, that the loss was not occasioned by the injunction, but by the tortious act of the plaintiff. . . . This is too narrow a view of the question.''

In a concurring opinion Mr. Justice Hogeboom in the same case said: ''The damages in question are occasioned by the injunction. But for the injunction the defendants would not have lost their property. By the injunction the plaintiff was *impliedly* authorized to take it. . . . The loss which the defendants have sustained, was incurred by com-

pliance with the order of the Court. . . . The liberal rule of damages declared . . . sustains the claim of the defendants in this case.''

The author of Sutherland on Damages, third edition, page 1443, section 527, quotes with approval the foregoing language of the last-mentioned authority.

▉ We conclude that where the damage is not remote, but may be reasonably anticipated and attributed to the effect of the injunction, as in the present case, the bond is liable.

The cases relied upon by appellant may be readily distinguished from the present action. In *Cummings* v. *Mugge*, 94 Ill. 186, the timber which was the subject of litigation was in the hands of the sheriff on a writ of replevin, at the time the injunction was issued. The owner therefore did not have the custody or right of possession while the injunction was in force. The language of the injunction does not appear. Pending the litigation, the complainant appropriated the timber. Upon dissolution of the injunction the owner was allowed damages, but not for the full value of the timber which was taken. The value of the timber appropriated would be a proper subject of compensation in the replevin action. The court said: ''The service of the writ of injunction in no way authorized or caused the wrongful act of the appellee in taking or converting the property.'' If the timber had remained in the hands of the sheriff, in the absence of the injunction, the owner would have had no power to exercise rights of ownership over it to prevent an appropriation thereof. In the present case the very restraining order, the construction of which is here involved, recognizes Potter's right to retain, control and market the crop of grapes and specifically enjoins the respondents from interfering therewith. There is a clear distinction between these cases in that regard.

In the case of *Gobbi* v. *Dileo*, 58 Or. 14 [34 L. R. A. (N. S.) 951, 111 Pac. 49, 113 Pac. 57], and the later case of *Burley Tobacco Growers, etc.,* v. *Pennebaker, etc.,* 221 Ky. 718 [299 S. W. 734], it is held that the surety on an injunction bond is not liable for the theft or appropriation of the property by *strangers* to the litigation. This principle seems sound and reasonable, for under such circumstances the loss cannot be anticipated or attributed to the

wrongful act of the complainant who procured the injunction, unless it could be shown that his negligence in the lack of care of the property contributed to the loss or theft. But that feature was not involved in either cause. The court in these cases merely holds that the theft or appropriation of the property by a stranger to the litigation was not the proximate result of the granting of the injunction.

In the case of *Wood* v. *Hollander,* 84 Tex. 394 [19 S. W. 551], the recorded facts indicate that subsequent to the issuing of an injunction, a receiver was appointed and by order of the court the property involved in the litigation was entrusted to the receiver during which time the damage accrued. Upon dissolution of the injunction damages were sought to be recovered against the surety. It was held that the injunction bond was not liable for the reason that the responsibility had been transferred to the receiver and the loss was therefore not by reason of the injunction, although the receiver would be liable on his bond, as such, for his mismanagement. (1 Joyce on Injunctions, p. 313, sec. 191.)

It is true that counsel fees which are recoverable as damages upon dissolution of a temporary restraining order wrongfully procured must be confined solely to compensation for the reasonable value of the services actually performed in vacating the order alone. (*Curtiss* v. *Bachman,* 110 Cal. 433 [52 Am. St. Rep. 111, 42 Pac. 910]; *Mitchell* v. *Hawley,* 79 Cal. 301 [21 Pac. 833]; 1 Spelling on Injunctions, p. 821, sec. 969.)

In the present case the undertaking was given to secure damages which accrued by reason of a temporary restraining order which was granted in a suit to foreclose a crop lien, pending the hearing of an order to show cause, which was set for a definite date. The order to show cause and the petition to vacate the temporary restraining order were necessarily heard together. The disposition of the temporary restraining order, and the order to show cause, necessarily determined the pending petition for injunction, which was merely incident to the chief issues of the case. The merits of the cause, which was primarily a suit to foreclose a chattel mortgage upon the grape crop, were in nowise involved in this hearing for which counsel fees are claimed as an element of damages. The case was never

tried upon its merits. When the restraining order was denied the plaintiff dismissed his action. The record in the present case sufficiently supports the findings of the court and the pleadings to the effect that the legal services were all necessarily performed in procuring a dissolution of the temporary restraining order.

The plaintiff, William Neil Moore, testified that he hired two lawyers to represent him in the injunction proceeding; that they were engaged three days in the performance of that service and that he paid them $100 therefor. "Q. How many days were you engaged in the hearing of the injunction proceedings? A. Three days, I think. Q. Were these attorneys acting for you in court during those days? A. Yes. Q. Did they do any work for you other than in an appearance in regard to this injunction . . . ? A. No, sir. . . . Q. Did they make any charge for their services in this matter? A. Yes. Q. What was that charge? A. One hundred dollars. Q. Did you pay that one hundred dollars? A. Yes." Expert testimony of the reasonable value of the services was unnecessary. The extent, duration and nature of the services as shown by the record furnished the court with ample evidence upon which to determine the value of the services. (*Spencer* v. *Collins,* 156 Cal. 298 [20 Ann. Cas. 49, 104 Pac. 320]; *Zimmer* v. *Kilborn,* 165 Cal. 523 [Ann. Cas. 1914D, 368, 132 Pac. 1026]; *Conner* v. *Blodget,* 18 Cal. App. 787 [124 Pac. 733]; 2 R. C. L. 1059, secs. 145–147.)

The appellant contends that the evidence fails to support the finding that he "picked, destroyed or converted to his own use," grapes of the reasonable value of $365.90. The evidence as to the quantity and value of the grapes which were appropriated might have been more definite and certain. However, we are of the opinion that the record sufficiently sustains the findings in this regard. The damage which was allowed, was small compared with the usual production of the eleven acres of vines, and the evidence indicates that the major portion of the crop was lost to respondents. While it is true that Mr. Burson, who was formerly the managing agent for the Stewart Fruit Company, and who directed the picking of the grapes in question for Potter, testified as a witness for respondents that they shipped only about 270 boxes, the shipping statements of

the company which were introduced in evidence show that 198 crates of Tokay grapes were shipped from the Moore ranch in 1926, and brought a net market price of over fifty cents per box. ▮▮▮ In the absence of evidence to the contrary, the price which a portion of the same variety and crop of grapes actually brought in that market at the time of the conversion, furnishes ample proof of the reasonable market value thereof. (23 C. J., p. 57, sec. 1802.) Mr. Burson further testified: "The Stewart Fruit Company handled this property for several years. . . . Around sixteen to eighteen hundred [boxes], maybe two thousand Tokays were taken off the vineyard the year before, and I judge was something like that this year in question. Q. From sixteen hundred to two thousand? A. Something like that, I would say." The plaintiff, William Neil Moore, testified that they had picked not more than seventy-five boxes of grapes from the vineyard that year before they were stopped by the restraining order; that no other persons picked grapes in that vineyard that season except himself and men who were employed by the appellant and that after the restraining order was dissolved there remained unpicked only "415 lugs, consisting of 245 Black Prince, 152 Tokays," etc. For the purpose of supporting the judgment it may be assumed from the foregoing state of the record that the court disregarded the statement that only 270 boxes were shipped and accepted the same witness' statement that the vineyard that year produced 1600 to 2,000 boxes of Tokay grapes, and that appellant was responsible for the destruction or conversion of the entire crop, except the seventy-five boxes which plaintiff testified were picked before the restraining order was issued, together with the 152 boxes of Tokay grapes which were all that remained after the dissolution of the order. This would leave over 1300 boxes of Tokay grapes which were lost by the respondents. The actual sales of Tokay grapes from this crop that season netted over fifty cents a box. The record contains no other evidence of the value of the grapes. This is therefore *prima facie* evidence of their reasonable market value, amounting to a sum far in excess of the damages allowed on that account by the court. Furthermore, there is some evidence that the grapes were picked prematurely with the inference that the market price which was received was mate-

rially less on that account. There was also evidence of loss sustained in permitting the grapes to mold and in upsetting and spilling a quantity of them. We are not apprised of the basis upon which the trial court computed the damages which were allowed and merely suggest the foregoing as a plausible theory which finds ample support in the record, sufficient upon which to warrant the upholding of judgment in that regard.

The damages which were allowed by the court included an item of $29 which was incurred in the payment of court costs in the foreclosure proceeding. It does not appear what proportion of this sum, if any, was expended strictly on account of the issuing of the restraining order. Upon the authorities heretofore cited, this item was therefore improperly allowed, and the judgment should be modified to that extent.

Accordingly, the judgment is modified by striking therefrom the sum of $29, and as so modified the judgment is affirmed, the respondents to recover their costs.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 19, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 18, 1929.

All the Justices present concurred.