## West Kentucky Coal Company v. Dyer, etc.

(Decided December 4, 1914.)

### Appeal from Union Circuit Court.

1. Instructions—Condemnation of Land for Railroad Right of Way. —In condemnation proceedings for a railroad right of way through the land of another, instructions which told the jury that defendants should be allowed as direct damages the fair market value of the land actually taken for the roadbed, the cost to them of the erection of gates and fences resulting therefrom, and such other damages as directly resulted to the remainder of the tract, if any, not exceeding the difference between the fair market value of the land immediately before and after the taking of the right of way, gave for the guidance of the jury all the law applicable to the issues of fact made in the case.

2. Evidence—Admissibility—Contiguous Lands—Market Value.—Evidence as to the market value of lands contiguous to that of defendants, condemned for a railroad right of way, or the prices at which such contiguous lands sold, about the time of the condemnation proceedings, was admissible as bearing on the market value of defendants' land.

3. Evidence—Damages—When Not Excessive.—In this proceeding to condemn land for a railroad right of way, evidence held insuf-

ficient to show that the damages awarded were so excessive as
to indicate passion or prejudice on the part of the jury.

H. D. ALLEN and P. B. MILLER for appellant.

H. X. & E. R. MORTON and P. H. WINSTON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Mrs. M. E. Dyer, owns a life estate in
255 acres of land near Sturgis, in Union county. The
remaindermen owning the fee are the other appellees,
ten in number, who are the children of John M. Dyer,
deceased. On the south side of the land is a public road
called the Pond Fork road, and there is on the north
side of the land, and partly running through it, another
public road known as the Arnoldton road, which sepa-
rates thirty-seven acres of the land from the main body.
The appellant, West Kentucky Coal Company, a cor-
poration, owns and is operating a coal mine on land east
of and contiguous to the Dyer land. Desiring to con-
struct a railroad from its mine through appellees' land
to connect with the Illinois Central railroad at Sturgis,
appellant attempted to purchase a right of way through
appellees' land, but, the parties failing to agree upon
the price, appellant instituted in the Union County Court
condemnation proceedings for the purpose of securing
such right of way.

Commissioners were appointed by that court to assess
the damages of the land owners, and their report fixed
the damages as a whole at $1,500.00. One of the com-
missioners declined, however, to sign the report upon the
ground that he did not agree with the other commission-
ers as to the amount of damages found. To this report
of the commissioners appellees filed exceptions in the
county court. Upon the trial in the county court of the
issues of fact raised by appellees' exceptions to the re-
port of the commissioners the jury returned a verdict
fixing their damages at $3,000.00, and judgment was en-
tered accordingly. From that judgment the appellant
prosecuted an appeal to the Union Circuit Court, and,
upon the trial in that court, the jury returned the follow-
ing verdict:

"We, the jury, find for the defendants damage for
the right of way and fence to amount of Three Hundred
and twenty-six & 90/100 ($326.90) Dollars; and the
amount of damage to Two Hundred and sixteen and one-

half acres of land at fifteen ($15.00) dollars per acre. Total Thirty-five Hundred and Seventy-four & 40/100 ($3,574.40) Dollars.

"C. D. Oglesby, Foreman."

Judgment was entered in accordance with this verdict. The appellant was refused a new trial, and it has appealed to this court.

The grounds assigned by the appellant for a reversal are: (1) That the trial court erred in instructing the jury; (2) In admitting incompetent evidence and rejecting competent evidence; (3) that the damages allowed were excessive.

Three instructions were given by the trial court, but only those numbered 2 and 3 were objected to. In the brief of appellant's counsel it is merely stated that instruction No. 2 "does not embody the law as applicable to the question to be tried thereunder." The instruction relates wholly to the damages to be awarded by the jury for the value of the ground actually taken for the railroad and the cost to the appellees of the fencing and gates necessary to be erected because of its construction and maintenance through their land. These are elements of damage properly recoverable by the landowner in such case and authorized by the evidence, and no fault can be found with the language of the instruction.

Instruction No. 3 in apt words defines the further damages recoverable in such case by the landowner and conforms to the requirements of section 836, Kentucky Statutes, which provides that in fixing the damages of the landowner the commissioners or jury "shall also award the damages, if any, resulting to the adjacent lands of the owner, considering the purpose for which it is taken. * * *" The instruction further advised the jury that, as to this matter, the measure of damages was the difference between "the fair and reasonable market value of the farm before the taking of said land and construction and operation of the railroad upon it, and its fair and reasonable market value after said railroad was constructed thereupon." As there was no proof whatever that appellees' adjacent lands would be benefited from the construction and prudent operation of the railroad, it was unnecessary and would, indeed, have been improper, for the instruction to tell the jury that such advantages and benefits as would thus accrue should be deducted by them from the damages actually sus-

tained to the adjacent lands of appellees from the construction of the railroad. In our opinion, this instruction conforms to the facts of the case and, in connection with instruction No. 2, presented, for the guidance of the jury, all the law applicable to the case on the subject of the damages that might be awarded appellees.

Appellant complains because C. H. Ellis was required to testify, over its objection, that C. F. Richardson, vice president of appellant company, is a stockholder in and director of the bank of Sturgis, of which the witness was an officer. The purpose of this question was to show that Ellis, who was introduced as a witness by appellant on the question of damages, was biased in its favor because of his association with Richardson in the business of the bank. We do not think this testimony was competent as it is too remote to be considered by the jury as a circumstance affecting Ellis' credibility as a witness. Appellant also complains that another of its witnesses, Dennis O'Nan, was required by the court to testify that Jenkins, appellant's mine manager, Harry Barclay, manager of one of its stores, and Earl Bishop and Jess Collins, its employes, were all sons-in-law of O'Nan. The competency of this evidence is doubtful, but the testimony thus elicited from Ellis and O'Nan cannot be regarded as sufficiently prejudicial to authorize the reversal of the judgment of the circuit court; and especially is this true in view of the fact that appellant's counsel were permitted by the court to obtain from Ellis the statement that two of the appellees were stockholders in the Sturgis Bank, and, in addition, from appellees' witnesses, J. D. Harris, C. C. Hammack and G. W. Holt, for the purpose of showing their supposed bias admissions that the appellant had made some sort of claim to the ownership of coal under their lands and possibly was contemplating condemnation proceedings against them for the purpose of mining it.

The alleged competent evidence excluded by the court, of which appellant complains, was the testimony of the witness Slaton, who was not allowed to testify on appellant's examination that his land, several miles from appellee's, and through which the Illinois Central Railroad runs, was purchased by him eight years ago at $75.00 per acre, but it is now worth $150.00 per acre. This evidence was properly excluded, as it is incompetent on several grounds. There was no showing by the witness Slaton that his land was the same in quality as

that of appellees', or that its condition from the construction and operation of the railroad on it was the same as appellees'. Besides, the railroad through Slaton's land is a permanent through line, operated for the transportation of passengers and freight, and its trains are run on schedule time; whereas, the railroad running through appellees' land is not a public carrier, begins at Sturgis and ends at appellant's mine, is but a few miles in length, and its trains are used only for transporting coal from the mine to the Illinois Central Railroad at Sturgis and supplies from the latter place to the mine, and are not operated on schedule time, but irregularly and at all hours. In addition, it so divides appellees' land as to separate sixteen acres thereof, containing the dwelling house, barns and other out-buildings, from the main body of the land, leaving the public highways and stock water on the farm on the opposite side of the railroad from the dwelling house and barns, thereby making it impossible for appellees to water their stock or reach the public roads without crossing the railroad, which necessarily subjects the members of the family and the stock to the constant risk and danger of encountering and being run over by appellant's moving trains, having no schedule or known time of passing through the farm.

Moreover, it was not competent to arrive at the market value of appellees' land by comparing it with a particular farm in the same neighborhood, whether traversed by a railroad or not; but in fixing its value it would have been competent to prove the average market value of other lands of like character in the same locality, or the prices at which such lands had been sold about the time of the institution of the condemnation proceedings. This question was before us in Chi. St. L. & N. O. R. Co. v. Rottgering, 26 R., 1167. In the opinion it is said:

"It is complained by counsel for appellant that the trial court erred in admitting testimony * * * to prove the price at which other adjoining and contiguous land sold at about the time appellee's was taken. * * * As to the evidence in regard to the prices at which other land near that of appellee sold, it will suffice to say that such evidence has, by this and other courts, been declared competent. 'Such sales when made under normal and fair conditions are necessarily a better test of the market value than speculative opinions of wit-

nesses, for truly here is where money talks.' " City of
Paducah v. Allen, 23 R., 701; L. A. & P. V. Elec. Ry.
Co. v. Whipps, 118 Ky., 121; Railway v. Clark, 121 Mo.,
169.

Appellant's final complaint that the damages awarded
appellee are so excessive in amount as to indicate that
the verdict was the result of passion or prejudice on the
part of the jury is unsupported by the record. Appel-
lant does not object to the item of $326.90 awarded ap-
pellees to pay for the land taken for the railroad right
of way, cost of fencing and erection of gates, but the
complaint is wholly as to the $3,247.50 allowed by way
of damages to the residue of the land. Quite a number
of witnesses testified on this subject, those introduced
by appellant, in fixing the difference in its fair market
value before and after the construction of the railroad,
variously estimated the depreciation at from three to
seven dollars per acre, while those introduced in behalf
of appellees fixed the depreciation in value at from
fifteen to twenty dollars per acre; none of them putting
it below fifteen nor more than twenty dollars, though
quite a number placed it at the latter amount, and two
of the appellees, Ben W. and O. P. Dyer, fixed the de-
preciation in value at thirty dollars per acre. As the
verdict fixed it at fifteen dollars per acre, it is manifest
that the jury accepted the lowest amount indicated by
appellees' witnesses. It should be here remarked that
several of appellant's witnesses, according to their own
admission, were without experience in farming and had
never dealt in farming lands; others of them not only
confessed their limited knowledge of the appellees' land,
but also their ignorance of the location thereon of the
railroad. On the other hand, practically all of the wit-
nesses introduced for appellees testified to a long and
intimate knowledge of the land in question and that
they had been over and examined it both before and
after the railroad was constructed. In addition, their
testimony, with few exceptions, manifested their ac-
curate knowledge of the market value of appellees' land
and other adjacent lands of like quality in the same lo-
cality. The jury had a right to accept the evidence of
appellees' witnesses rather than that introduced in be-
half of the appellant, and, in view of the evidence as a
whole, we are unable to say that we are surprised at
their having done so. As said in Chi. St. L. & N. O. R.
Co. v. Rottgering, *supra,* a case quite similar to this:

"There can be no doubt that the jury had sufficient evidence to justify them in placing appellees' damages at the amount named in their verdict, if they were willing to accept the testimony of their witnesses in preference to that of appellant's witnesses, which they evidently did. And we find nothing in the record that tends to show appellees' witnesses any less intelligent or reputable than those of appellant. It does, however, appear that many of them live near the land of appellees, and, by reason of that fact, were probably better acquainted with its value than were the witnesses of appellant. * * * The question of appellees' damages was one to be tried by the jury, and, as has been repeatedly held by this court, their verdict will not be disturbed upon appeal unless it is apparent that it is unsupported by, or is flagrantly against, the evidence, or so excessive in amount as to indicate that it was the result of passion or prejudice upon the part of the jury."

As we are unconvinced from anything appearing in the record that the verdict is unsupported by, or is flagrantly against, the evidence, or that it is so excessive in amount as to indicate that it was the result of passion or prejudice upon the part of the jury, we are without authority to disturb it. The judgment is, therefore, affirmed.