## WASHINGTON HOME FOR INCURABLES et al. v. HAZEN et al.

### No. 5834.

Court of Appeals of the District of Columbia.
Argued March 5, 1934.

Decided April 23, 1934.

Stanton C. Peelle, of Washington, D. C., for appellants.

William W. Bride and Vernon E. West, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellants appeal from a decree of the Supreme Court of the District of Columbia in a proceeding brought by the commissioners of the District to condemn lands for the opening and extension of Idaho avenue, between Rodman and Tilden streets; 37th street, between Quebec and Upton streets; Tilden street, between Wisconsin avenue and Reno Road; and the widening of Reno Road through parcel 43/65, in the District of Columbia.

It appears that appellant William D. Sterrett, in 1931, sold to the United States for the use of the Bureau of Standards, at the price of 70 cents per square foot, a parcel of land described on the plat as 44/32, containing 13,113 square feet, fronting on Pierce Mill road, similar to and less than a city block distant from part of the land here sought to be condemned. It also appears that a short time prior to the institution of this proceeding, the commissioners of the District of Columbia had purchased land at 50 cents per square foot for a school and playground site, immediately adjoining and similar to the land sought to be condemned in this proceeding, consisting of three parcels bounded on the west by 37th street, on the north by Tilden street, and on the east by Idaho avenue.

The testimony introduced on behalf of the commissioners fixed the value of the property to be condemned, belonging to appellant, Washington Home for Incurables, 55,-158.06 square feet, at an average of about 18 cents per square foot; and the property belonging to the appellants Sterretts, 128,830.-91 square feet, immediately adjoining the school site, at about 20 cents per square foot.

The appellants offered as witnesses two real estate experts in the District of Columbia, one of whom, the witness Arthur C. Houghton, fixed the value of the property to be condemned, belonging to the Washington Home for Incurables, at 65 cents per square foot; and the property belonging to the Sterretts at 55 cents per square foot. The other real estate expert, Thomas P. Bones, fixed the value of the property to be condemned, belonging to the Washington Home for Incurables, at 75 cents per square foot; and the property belonging to the Sterretts at 75 cents per square foot. On the other hand, the expert witnesses produced on behalf of the District fixed the value of the land to be condemned at prices ranging from 13 cents to 25 cents per square foot.

The jury, in its verdict, awarded to the Washington Home for Incurables the sum of

$11,031.61, or 20 cents per square foot; and assessed benefits in the sum of $5,648.70, leaving a net amount which the home would receive of $5,382.91, or a fraction over 9 cents per square foot for the land taken. The Sterretts were awarded $29,168.36, or a fraction over 22 cents per square foot; and assessed as benefits $19,972.94, leaving a net amount of $9,193.42, or a fraction over 7 cents per square foot.

In the course of the trial, appellants offered testimony showing that the commissioners, at private sale, had paid for the school site 50 cents per square foot, and that the government had paid for the property for the use of the Bureau of Standards 70 cents per square foot. Objection was interposed on the part of the commissioners to the admission of this testimony. The objection was sustained, and exception taken to the ruling of the court. The refusal of the court to admit this testimony presents the single question for consideration on this appeal.

It will be observed that there is a wide variation between the valuation fixed by the witnesses for the District, and that fixed by the witnesses for the defendants. The admissibility of evidence as to the price paid for similar lands adjoining or in the immediate vicinity of those to be condemned has been the subject of some difference of opinion on the part of the courts in the various states; but an analysis of the strict rule applied by these courts, either in admitting or excluding such evidence, discloses a line of reasoning that seems to establish a somewhat uniform rule. For example, the general rule announced by Lewis in his work on Eminent Domain (2d Ed), § 447, and which is cited with approval in many of the cases to which we have been referred in the able briefs furnished in this case, the writer seems to have had in mind the real distinction as to when such evidence is admissible and as to when it should be excluded. The general rule is stated as follows: "What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less

than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, either in a proceeding by the same condemning party or otherwise."

Considering the reasons for the rule, as stated by the author, it is clear that there may be exceptional cases where a general rule of this sort would be inapplicable. The exception is expressly recognized by the same author in his Third Edition, section 662, as follows: "The propriety of allowing proof of the sales of similar property to that in question, made at or about the time of the taking, is generally approved by the authorities. But such evidence is held to be incompetent in several of the States. In regard to the degree of similarity which must exist, between the property concerning which such proof is offered and the property taken, and the nearness in respect of time and distance, no general rules can be laid down. These are matters with which the trial judge is usually conversant, and they must rest largely in his discretion." The author then proceeds to discuss leading cases from different states illustrative of the law upon the subject.

The proper rule and exception is clearly stated by Chief Justice Holmes in O'Malley v. Commonwealth, 182 Mass. 196, 198, 65 N. E. 30, 31, where the state was changing the grade and altering the street, and the question involved damages to improved property. Evidence was given of a sale of vacant land to the Metropolitan Water Board. The court, upholding the admission of this evidence, said: "An exception was taken to the admission of a sale to the Metropolitan Water Board. If the judge had been of opinion that, as was found in Cobb v. City of Boston, 112 Mass. 181, 183, the evidence related rather to a settlement of damages occasioned by a taking than a sale, and had excluded the evidence on that ground, very likely we could not have said that he was wrong. Sawyer v. City of Boston, 144 Mass. 470, 471, 11 N. E. 711. But the exceptions show none of the circumstances—nothing beyond the bare fact of a sale. We cannot say merely because of the name of the purchaser that the sale was not a fair transaction in the market rather than a compulsory settlement. The board has power to purchase as well as to condemn land."

It will be observed that in the above case the purchase was not by the condemning party, but by another party, as in the instant case of the government purchasing the site for the use of the Bureau of Standards; but, in the absence of conditions forbidding the admission of such evidence, the rule does

not seem to be different where the purchase has been made by the condemning party.

In the case of Seaboard Air Line Company v. Chamblin, 108 Va. 42, 60 S. E. 727, 730, a railway company having purchased an undivided half interest in real estate at a specified price under circumstances which showed that the purchase was made without compulsion and not by way of compromise, the court, holding that evidence of the purchase price is admissible for the purpose of ascertaining the market value of the remaining undivided half of the same property in a proceeding instituted by the company for its condemnation, said: "Without undertaking to say what the rule would be as applied to a different state of facts, we are of opinion that the railway company having purchased an undivided one-half interest in real estate at a specific price, under circumstances which show that the purchase was made without compulsion, and not by way of compromise, is admissible evidence for the purpose of ascertaining the market value of the remaining undivided fee-simple one-half of the same property in a proceeding instituted by the company for its condemnation."

The conditions under which evidence of this sort is admissible or inadmissible are considered by Wigmore in his work on Evidence, in section 463, as follows: "For evidential purposes, sale-value is nothing more than the nature or quality of the article as measured by the money which others are willing to lay out in purchasing it. * * * As the price at a sale is, by the law of damages, conceded to be an element in the test of value (except perhaps in forced sales), this question is usually presented in the form, whether a sale of other property is admissible as evidence of the value of the property in question. In answering this question, it is found that the two leading principles already expounded come into joint application, the principle of relevancy and the principle of auxiliary policy. According to the former, the value or sale-price of the other property is irrelevant unless the property is substantially similar in conditions; according to the second, it may also be excluded, though relevant, if it involves in the case in hand a disproportionate confusion of issues and loss of time. The latter consideration has weighed so much with a few courts that they have treated it as requiring the absolute and invariable exclusion of such evidence. * * * It is enough to note (1) in answer to the argument from relevancy, that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; all the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy; (2) in answer to the argument from auxiliary policy, it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow the trial court, in its discretion, to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it."

As pointed out by Mr. Justice Holmes in the O'Malley Case, there are cases in Massachusetts holding both favorable and unfavorable to the admission of such evidence. A similar situation may be found by an examination of the cases in New Jersey, New Hampshire, West Virginia, and other states, but in all of these judicial utterances the inadmissibility of the evidence is placed upon the ground of compulsion, either upon the vendee or vendor, or of circumstances tending to establish a compromise in the purchase price which would deprive it of evidential relevancy in the establishment of fair market value.

An examination of the record in this case discloses nothing that would indicate the existence of any of these prohibitive conditions, either in the purchase of the school site or of the Bureau of Standards site, which would prevent the admission of this evidence on behalf of appellants. In a communication by the assistant to the engineer commissioner of the District, addressed to the Washington Home for Incurables, with a view of securing a portion of the land purchased for the school site, the engineer commissioner said: "I therefore, now formally offer you, subject to the approval of the Commissioners of the District of Columbia, a price of 50¢ a foot for this property, and I respectfully request that you give this matter careful consideration. In addition to the very fair price which you will be securing for this property, you will avoid any further expense of condemnation proceedings, and will have the satisfaction of knowing that you are not causing additional expense to the taxpayers of the District by requiring them to pay for court proceedings in this matter."

Since the evidence relied upon by the commissioners in this case is little more than one-third of the valuation fixed in this communication, and the character of the property

identical or very nearly so, the commissioners would be foreclosed from objecting to the evidence on the ground of compulsion, or fear of condemnation proceedings. In other words, had the evidence adduced by the commissioners shown a valuation in excess of the price paid for the school property, and the commissioners had insisted upon the evidence of the value fixed in the purchase of the school site as competent evidence of the value of the property to be condemned, an objection might have been interposed by the defendants on the ground that the language used by the engineer commissioner to the effect that, if his offer were accepted, the delay and expense of condemnation proceedings would be avoided, would justify the inference that the vendors were induced by the statements of the city engineer to accept less than the actual market value of the property. These statements, made in the interest of the District, for the purpose of inducing an acceptance of its offer for the school site, would doubtless render this evidence, if offered by the District, incompetent. But the rule has a different application where the evidence, as in this case, is offered by the party to whom the inducements were made, and against the party making them.

In a further communication from the assistant engineer commissioner to the engineer commissioner, in reference to the property acquired from the Sterretts for school purposes, he said: "The price at which this property is offered is considerably in excess of the assessed value, but is equal in value to adjoining ground on which the assessment has been recently increased to a figure much nearer the price of 50¢ per foot. I have consulted the assessor and other authorities and it is felt that a more favorable price would not be secured in the condemnation proceedings which have already been instituted against this property." Following this letter, the commissioners ordered the purchase of the land, as recommended by the assistant engineer.

In view of these communications, which show that the price paid was little, if any, in excess of the assessed valuation, which is generally below the market value, it would seem that the commissioners in the present case are not in position to object to the testimony excluded in this case; either on the ground that they purchased the property for the school site under compulsion, or that it was done under circumstances indicating other than a purchase at a valuation fixed by the officers of the District.

The decree is reversed with costs.