[Civ. No. 6004.   Third Appellate District.—June 10, 1938.]

OLIVE KRUG, Respondent, v. JOHN E. YOAKUM COM-PANY (a Corporation) et al., Appellants.

Alfred E. Cate, W. W. Kaye, M. J. Rankin, Milo V. Olson and Walter S. Home for Appellants.

Samuel W. Newman for Respondent.

PLUMMER, J.—This is an appeal from a decree of the trial court awarding the plaintiff a sum of money somewhat in excess of $32,000, less damages in a sum of money somewhat in excess of $8,000, and a lien upon certain properties,

the title to which stood in the name of the defendants Yoakum at the time of the execution of the agreement hereinafter mentioned.

In April, 1924, and for some time prior thereto, the appellants in this action were known as, and are hereinafter described as the ''Yoakum Group'' and the ''Grimes Group''. Both groups claimed an interest in real estate situate in the county of Los Angeles, and also in real estate situate in counties adjacent thereto, as well as in counties situate in certain portions of San Joaquin Valley. Litigation had been begun between the groups to quiet title to said property. The litigation referred to terminated in the trial court quieting title in the Yoakum Group to certain lands situate in the county of Los Angeles. The litigation terminated in quieting title in the Grimes Group to all the lands situate in counties outside of Los Angeles.

It appears that in 1924, and prior to the month of April, there were certain liens and incumbrances upon the lands situate in the county of Los Angeles, the title to which, as we have said, was subsequently declared to be vested in the Yoakum Group. In April, 1924, the respondent and the Yoakum Group entered into an agreement under which the respondent undertook to advance moneys for the purpose of protecting the properties then in litigation from the effect of certain mortgages, street bonds, taxes, liens, etc. Under this agreement the respondent advanced the sum of $32,483.24. To secure the respondent for the repayment of the moneys to be advanced by her, and which were advanced by her, the Yoakum Group, in pursuance of the agreement to which we have referred, executed a deed conveying to her all of the property then in litigation.

Subsequent to the execution of the agreement to which we have referred, and also subsequent to the execution of the deed just mentioned, the decree quieting title in the Yoakum Group to the Los Angeles real estate was entered; likewise, the decree quieting title in the Grimes Group to all of the real estate outside of Los Angeles County was entered. The Yoakum Group appealed from the decree quieting title in the Grimes Group, and the Grimes Group appealed from the decree quieting title in the Yoakum Group. For some reason not disclosed by the record the respondent was not able to furnish all the money that was required to pay off the mort-

gages, liens and incumbrances on the Yoakum properties. It appears that something over $100,000 was requisite for that purpose, and thereafter an agreement was entered into between the Title Guarantee & Trust Company and E. W. Sargent and the Yoakum Group and Grimes Group, by virtue of which Sargent was to loan the Yoakum Group the sum of $110,000, and the title to the properties was transferred to the Title Guarantee & Trust Company for the purpose of executing the trust, to wit: Sale of the property and payment of the incumbrances thereon. As a part of the same transaction it appears that the Yoakum Group and the Grimes Group agreed to settle their differences and partition among themselves the several parcels of property which formed the subject of the litigation.

In order that the Title Guarantee & Trust Company might be able to give purchasers a clear title, a stipulation was entered into by virtue of which the appeal in the Yoakum case should be reversed by the Supreme Court, and the trial court directed to enter a decree quieting title to the Los Angeles property in the Yoakum Group. When the loan was discharged the Yoakum Group was to get the Los Angeles properties, and the Grimes Group, the other properties. The appeal in the Grimes case was also to be dismissed. Upon the record the title to the Los Angeles property would thus be made to appear as vested in the Grimes Group, by reason of the fact that the litigation begun by the Yoakum Group to have title to the Los Angeles property vested in the Yoakum Group, preceded the agreement which was entered into between the plaintiff and the Yoakum Group, under which the plaintiff advanced a sum somewhat in excess of $32,000. Thereafter, the Title Guarantee & Trust Company proceeded to sell portions of the real estate herein referred to and obtained therefrom sums of money in excess to $100,000.

The respondent had judgment for the foreclosure of what the court determined to be an equitable mortgage or lien upon the Yoakum properties, and also held that the transactions which we have just mentioned were taken and had for the express purpose of defeating the claim or lien of the respondent, and thus enabling the Yoakum Group to escape repayment of the sums of money advanced by the plaintiff, and also enabling all of the defendants to escape any liability

for and on account of any lien held by the respondent upon the Yoakum properties.

The declaration of trust covering the situation, which appears not to have been recorded, shows that the Title Guarantee & Trust Company was not fully satisfied that the proceedings taken had eliminated the lien of the respondent, and therefore, in its declaration of trust, set forth that the conveyance was made subject to certain incumbrances, among which was the deed and agreement heretofore referred to, and that the Trust Company held the property in trust for the Yoakum Group as beneficiaries and Mr. Sargent as payee, subject to the specific trust thereafter enumerated, to wit: As security for the repayment of the moneys borrowed from Mr. Sargent, and as security for any money that may be due to Olive Krug, the respondent in this action.

Instead of seeking to rescind for failure of the respondent to furnish all the money necessary to pay off the liens on the Yoakum properties, the Yoakum Group in this action sought to recover damages. The trial of the action was had, the court made its findings and entered a decree called an interlocutory decree, and referring to a referee the question of damages, but specified that the findings of the referee shall stand as the findings of the court upon the matters referred to said referee, and that upon the filing of the findings of the referee with the clerk, this court shall enter its final judgment in the action. After the referee's report had been returned and approved by the court, thus terminating all of the findings to be made by the court and every action to be taken by the court save and except the simple entry of judgment thereon, the plaintiff or respondent in this action made a motion for a new trial, which was granted for the specific purpose of determining the priority of the liens to which we have referred, and especially the priority of the respondent's lien over the transactions had by the Yoakum and Grimes Groups with Sargent and the Title Guarantee & Trust Company.

The first ground urged for reversal herein is that a new trial may not be had where only an interlocutory decree has been entered. As an abstract proposition of law this is correct, but as applied to the instant case it is not correct. What we have stated shows that the action of the court stood as its findings and final decision as to all the facts involved

in the action, and nothing more remained to be done by the court, save the entry of judgment.

Section 632 of the Code of Civil Procedure shows clearly that the decision of the trial court consists of a making and filing of findings by which the facts are determined, and upon which conclusions of law are based, after which a judgment may be entered.

Section 656, *supra,* specifies that a new trial is a reexamination of the issues of fact in the same court, after a trial and decision by a jury, court or referee. This would seem to be a complete answer to the appellants' contention. However, it has been repeatedly held that under our present system the findings constitute the decision. (*Dominguez* v. *Mascotti,* 74 Cal. 269 [15 Pac. 773]; *Estate of Barker,* 207 Cal. 112 [276 Pac. 992]; *Brison* v. *Brison,* 90 Cal. 323 [27 Pac. 186].) In the Brison case the opinion takes up and discusses what constitutes the decision of the trial court and as constituting a basis for a motion for new trial. ▮ Likewise, the courts hold that the motion for new trial may be made and heard before the entry of judgment. (*Spanagel* v. *Dellinger,* 34 Cal. 476; *Brison* v. *Brison, supra; Johnson* v. *Phenix Ins. Co.,* 152 Cal. 196 [92 Pac. 182].) The cases cited by the appellant are not controlling here for the simple reason that in every one of them there remained something more for the court to do before judgment could be entered.

Upon the second hearing or trial of this cause it was adjudged that the lien held by the respondent was prior to the claims of any of the defendants; it was likewise held, and the findings of the court so state upon the first hearing, that the deed given to the plaintiff was given to her as security.

▮ As the testimony is not brought up upon this appeal, this finding must be presumed to be fully sustained by the evidence. In fact, in one of the answers filed by the Yoakum defendants it is set forth that after the execution of the deed and agreement which we have referred to, "that plaintiff thereafter held the title to all of said properties in trust for the use and benefit of these defendants and as security to the plaintiff for the sums of money which she agreed to advance pursuant to the terms of said agreement". ▮ We do not need to cite authorities to the effect that a deed, absolute in form, will be held to be only a mortgage when

given for the purposes of security. ■ That the actions to quiet title were begun prior to the execution by the Yoakum Group of the agreement with the respondent, and also the delivery by the Yoakum Group to the respondent of the deed to which we have referred, has no material value upon the issues involved herein, and therefore the inadvertent use of the word ''subsequent'' instead of the word ''prior'' in finding IV, is disregarded. ■ The real bone of contention in this action is the procedure taken by the Yoakum and Grimes Groups, the defendants, E. W. Sargent, and the Title Guarantee & Trust Company, to circumvent the lien of the respondent and escape repayment to her of the sums theretofore advanced by the respondent, as stated herein.

The appellants advance the argument, and cite numerous authorities to the effect that consent judgments are valid. With this statement, or with this position taken by the appellants, we fully agree, but it does not follow that a consent judgment for the purposes of circumventing a lien held by a third person is effective to accomplish that purpose.

■ We do not find that the appellants seriously contend that the findings of the court are not sufficiently supported by the testimony, to the effect that the proceedings which we have detailed were taken for the express and specific purpose of avoiding, if possible, the claims of the respondent. The history of the proceedings is fully set out in the transcript, and is too lengthy to be incorporated in this opinion, but we think a reading of such proceeding establishes clearly that the findings of the trial court are sufficiently sustained by the testimony. Nor do we need to review at length the many cases holding that where a judgment has been entered by collusion between the parties that it will simply be brushed aside as of no force or effect as to the rights and liens held by third persons. We need cite only one case, to wit: *Title Ins. & Trust Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 Pac. 542]. In that case it appears that the California Development Company was organized under the laws of New Jersey, for the purpose of diverting waters of the Colorado River, and by a series of canals, conveying the same to the Imperial Valley. To carry through this project it borrowed approximately $500,000, for which it issued a series of bonds, which were secured by a trust deed to the Title Insurance & Trust Company, under which there was conveyed and trans-

ferred to that trust company all of the land in California and all of the stock which the parent company owned in the Mexican company. In 1904, during a flood-tide in the waters of the Colorado River, a break in one of the levies occurred and the water poured through the break and found its way into the Salton sink, the lower land of which was owned by the New Liverpool Salt Company. This company suffered loss, brought suit for damages, and obtained a judgment in excess of $450,000. The development company was unable to stay the flow of the water. It applied to the Southern Pacific Company and was granted a loan embodied in a contract under date of June, 1905, under the terms of which the Southern Pacific Company was put in practical charge, and advanced a sum amounting to approximately $1,000,000. After the Southern Pacific Company was put in charge of the property, which included both the American and Mexican properties, and for the purpose of preventing an enforcement of the Salt Company judgment, it brought two actions against the Mexican company, one for $950,000 and another for $650,000. By consent between the Southern Pacific Company and the Mexican Company, judgment was confessed in favor of the Southern Pacific Company for both of the aforesaid amounts, and under the judgment for $650,000, it caused an execution sale to be had of all the properties lying in Mexico. Its object was to prevent the enforcement of the Salt Company's judgment and the sequestration of the Mexican property by the Title Insurance Company as pledgee of the shares of stock of the Mexican Company. In deciding the case the court used the following language: "If, as a result of a collusive consent judgment, one has acquired the title to real estate, equity will treat the colluding party as being a trustee for the defrauded party, with respect to all of the fruits and benefits obtained by the colluding party from the consent judgment. In a foreclosure, equity will brush aside the consent judgment and enforce the lien sought to be foreclosed, as if such consent judgment did not exist." The recital of the facts in the opinion in the case of *Title Ins. Co.* v. *California Dev. Co., supra,* covers too many pages for us to quote therefrom satisfactorily, but a reference thereto shows that every point presented in this case is covered and absolutely negatives the contentions made by the appellants, and establishes the fact that the proceedings taken and

had in this case are insufficient to avoid the priority of the respondent's lien.

 · Under the agreements and trust declaration by which the Title Guarantee & Trust Company has taken precautions to save itself harmless from any judgment that might be entered in favor of the respondent, we can perceive no real reason why the personal judgment against the Title Guarantee & Trust Company should not be upheld.

The judgment of the trial court is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 9, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 8, 1938.