[L. A. No. 19575. In Bank. June 27, 1946.]

CITY OF LOS ANGELES, Respondent, v. HENRIETTA HAWLEY COLE et al., Defendants; CONCEPCION CALDERON DE ACOSTA et al., Appellants.

Burr & Smith and Philip Grey Smith for Appellants.

Harold W. Kennedy, County Counsel, and S. V. O. Prichard, Assistant County Counsel, and Gerald G. Kelly, Deputy County Counsel for Respondent.

SPENCE, J.—This is an action in eminent domain (Code Civ. Proc., § 1237) instituted by the plaintiff city to acquire twelve parcels of land in the Los Angeles Civic Center area for a new alignment of certain streets therein. For the determination of the market value of parcels 5, 9 and 11, a "first trial" was had before a jury and a verdict was returned. Thereafter, and before any other issue was tried and before findings were signed or judgment was entered, plaintiff filed a so-called "notice of intention to move for a new trial." An order was made granting said motion "particularly upon the ground that the evidence is insufficient to justify the verdict of the jury." From said order defendants interested in the parcels in question filed an appeal, which they later abandoned upon joining with plaintiff city in a stipulation requesting that the action "be set for retrial." A "second trial" was then had, wherein a jury determined the market value of the three parcels, the court determined other issues in the condemnation proceeding, findings were filed, and a judgment was entered. Defendants moved for a new trial. They also moved the court to have the "second trial" in its entirety declared void—to have the jury's verdict therein and the judgment set aside. These motions were denied. From the judgment and from the orders denying said motions, defendants prosecute this appeal.

The first point to be considered is the efficacy of the "second trial." Appellants claim that the entire "second trial proceedings" were void and should have been set aside because respondent's so-called "motion for a new trial" in the original proceedings was made in consequence of the jury's verdict on the single issue of market value and before the determination of the remaining issues, such as use and necessity, and before the filing of any findings of fact or conclusions of law; that said motion was therefore premature and the trial court was without power to grant it. (*Reclamation District No. 556* v. *Thisby*, 131 Cal. 572, 574 [63 P. 918]; *Estate of McKenna*, 138 Cal. 439, 440 [71 P. 501]; *San Joaquin & Kings River Canal*

& *Irrigation Co.* v. *Stevinson,* 30 Cal.App. 405, 413-415 [158 P. 768] ; *Hinshaw* v. *Superior Court,* 45 Cal.App. 105, 106-107 [187 P. 41].)

Respondent contends: (1) That the 1923 amendment (Stats. 1923, p. 751) of section 659 of the Code of Civil Procedure was "deliberately calculated to change the rule announced" in the cited cases; and (2) that in any event, appellants are now estopped by their conduct from questioning the action of the trial court in setting aside the verdict of the jury and proceeding with the "second trial." We cannot agree with respondent's first contention but we are of the opinion that respondent's second contention must be sustained.

With respect to respondent's first contention, the cited authorities are conceded to be directly in point unless the 1923 amendment to section 659 changed the rule thereby established. Those authorities lay down the rule that in a case where some of the issues are to be tried by a jury and other issues are to be tried by the court, and where no judgment in favor of either party can be entered until all issues have been thus determined, new trial proceedings are premature when instituted after a verdict of the jury and before the determination of the other issues. The reason for the rule is that there is no completed "trial and decision" (Code Civ. Proc., § 656) and there is no "party aggrieved" (Code Civ. Proc., § 657) until such time as there has been a completed trial and decision, at which time nothing remains to be done except to enter judgment in favor of the prevailing party.

In the cited condemnation cases (*Reclamation District No. 556* v. *Thisby,* 131 Cal. 572 [63 P. 918] ; *San Joaquin & Kings River Canal & Irrigation Co.* v. *Stevinson,* 30 Cal.App. 405 [158 P. 768] ; *Hinshaw* v. *Superior Court,* 45 Cal.App. 105 [187 P. 41]), it is clear that no judgment could have been entered upon the verdict fixing damages unless and until the court had determined the other issues, such as use and necessity, in favor of the condemner. If those other issues had thereafter been determined adversely to the condemner, then condemnation would have been denied and the verdict fixing damages would have become immaterial. In *Estate of McKenna, supra,* 138 Cal. 439, there was a contest of a will in which only some of the issues had been submitted to the jury and those issues had been decided in favor of the proponents of the will. It is likewise clear in that case that no judgment or order admitting the will to probate could have been en-

tered upon the verdict unless and until the court had determined the other issues, such as due execution, in favor of the proponents. If those other issues had thereafter been determined adversely to the proponents, then the will would have been denied probate and the verdict determining soundness of mind and lack of undue influence would have become immaterial.

When section 659 of the Code of Civil Procedure was amended in 1923 to provide that the notice of intention to move for a new trial could be filed "either before the entry of judgment or within ten (10) days after receiving written notice of the entry of the judgment," it does not appear that the amendment was intended to change the rule of the cited cases so as to permit a motion for a new trial to be made before a completed "trial and decision" (Code Civ. Proc., § 656) and before there was a "party aggrieved" (Code Civ. Proc., § 657). If the 1923 amendment were to be so construed, then an order granting a new trial would be subject to an appeal and upon affirmance of the order, a new trial would be required in a case which, if allowed to proceed in the regular course through a completed trial, might be finally determined in favor of the appealing party. We are of the view that no such change, with the resulting useless expenditure of the time and effort of the parties and of the appellate courts, was ever intended.

There is nothing in *Estate of Green, supra,* 25 Cal.2d 535, which is contrary to the view which we have expressed. On the will contest there involved, contestant raised three issues, to wit: "Unsoundness of mind, undue influence, and fraud. She later abandoned the fraud issue and the remaining issues were decided in her favor by the verdict of the jury. The proponents' motion for a new trial was granted and contestant appealed from the order. This court held that "the notice of intention was not prematurely filed, and that the trial court had jurisdiction to pass upon the motion for a new trial made in pursuance of the notice of intention filed before the entry of judgment but subsequent to the rendition of the verdict of the jury." (P. 541.) *Estate of McKenna, supra,* was distinguished upon the ground that in the Green case "all issues raised by contestant, except one which had been abandoned, were submitted to the jury and decided by their verdict. As these issues were decided in favor of contestant, nothing remained to be done but to enter judgment." (P. 539.) And in

further distinguishing the McKenna case and others, this court quoted approvingly from *Krug* v. *John E. Yoakum Co.*, 27 Cal.App.2d 91, at page 96 [80 P.2d 492], where it was said: "The cases cited by the appellant are not controlling here for the simple reason that in every one of them there remained something more for the court to do before judgment could be entered."

It is entirely clear in the present case, that "there remained something more for the court to do before judgment could be entered." We therefore conclude from the cited authorities that the notice of intention to move for a new trial was prematurely filed and was ineffectual for any purpose (see, also, *Root* v. *Daugherty*, 201 Cal. 12, 14 [255 P. 181]; *Estate of Barker*, 207 Cal. 112, 114 [276 P. 992]; *Middleton* v. *Finney*, 214 Cal. 523, 527 [6 P.2d 938, 78 A.L.R. 1104]; *Reeve* v. *Jahn*, 9 Cal.2d 244, 250 [70 P.2d 610]) and that the efficacy of the so-called "second trial" cannot be predicated upon the theory that there had been a completed trial followed by a valid proceeding leading to the granting of a new trial. ▌ Under the facts before us, however, we do not believe that the foregoing conclusion compels the further conclusion that the so-called "second trial" must be declared void, and that a third trial of the issue of damages must be had. We therefore turn to respondent's second contention that appellants are estopped by their conduct from questioning the action of the trial court in setting aside the verdict and proceeding with the "second trial."

When the purported new trial was granted upon the ground of the insufficiency of the evidence to sustain the jury's verdict in the "first trial," appellants took an appeal from the order granting the new trial. While appellants could have prevailed upon that appeal upon the ground that the motion had been prematurely made, they no doubt realized the futility of pursuing an appeal from the order, as the trial court's action had clearly indicated that if and when the trial might be completed and an award might be made in their favor, based upon the jury's verdict, a new trial would then be granted. Appellants therefore (1) abandoned their appeal from the order; (2) entered into a stipulation with respondent agreeing "that said action may be set for retrial by a jury"; and (3) thereafter freely participated in the retrial without any objection. These facts distinguish this case from any of the authorities to which reference has been made.

Our Constitution (art. I, § 14) provides that in eminent domain proceedings, the issue of damages "shall be ascertained by a jury, unless a jury be waived . . ." and it is therefore well settled that the verdict of the jury in fixing the value of the property taken is conclusive upon the court. (10 Cal.Jur. § 75, p. 369; *California Southern Railroad Co.* v. *Southern Pacific Railroad Co.,* 67 Cal. 59, 62 [7 P. 123]; *Vallejo & Northern Railroad Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 555-556 [147 P. 238]; *Housing Authority* v. *Forbes,* 51 Cal.App.2d 1, 8 [124 P.2d 194].) Nevertheless, when a trial of a condemnation case has progressed no further than the determination of the issue of damages without the determination of the other issues, there appears to be no reason why the parties may not consent to the retrial of the issue of damages and no reason why such consent should not thereafter estop the parties from questioning the validity of the proceedings on the retrial. ▇ Generally speaking, a valid stipulation may be entered into concerning any of the steps of an action or proceeding (Code Civ. Proc., § 283) and such stipulation is, of course, binding upon the parties, precluding objection to matters concerning procedure which have been expressly or impliedly agreed upon. (23 Cal.Jur. § 12, p. 826.)

It has been said that "Jurisdiction of the subject matter cannot be conferred by estoppel; but one who invokes or consents to a court's jurisdiction is estopped to question it on any ground other than that the court lacks jurisdiction of the subject matter." (21 C.J.S. § 108, p. 161; see, also, *Harrington* v. *Superior Court,* 194 Cal. 185, 188 [228 P. 15]; *In re McDonald,* 45 Cal.App. 480, 489 [187 P. 991].) Here the court had unquestioned jurisdiction of the subject matter involved in the uncompleted trial and, after the parties had invoked the jurisdiction of the court to proceed upon stipulation with a retrial of the partially tried cause, they should be estopped to question the efficacy of such retrial proceedings. To hold otherwise would permit the parties to trifle with the courts. The law should not and in our opinion does not countenance such action.

The situation presented here is not comparable to that involved in the case of *Tabor* v. *Superior Court, ante,* p. 505 [170 P.2d 667], the opinion in which has been this day filed. There an order granting a new trial was made after a completed trial and decision and after the entry of judgment. It was held that the timely filing of the notice of intention to

move for a new trial was jurisdictional and that in the absence of such timely filing, the trial court had no jurisdiction to set aside the judgment and grant a new trial despite the fact that the parties had raised no objection to the hearing of the motion. In the instant case, no completed trial or judgment was involved and the retrial was had pursuant to stipulation. It is simply a situation in which the parties, during the course of an uncompleted trial and at a time when no judgment could be entered, gave their written consent to the retrial of one of the issues after the trial court had clearly indicated that the jury's determination of that particular issue could not be permitted, after the trial of the remaining issues, to sustain any judgment based thereon. As the trial court had jurisdiction of the subject matter and as the parties consented to the action of the trial court in proceeding with the retrial of the single issue theretofore tried, we are of the opinion that this is precisely the type of case in which the doctrine of estoppel should be applied.

There now remain for consideration two points unavailingly raised by appellants as grounds for reversal of the judgment entered in the ''second trial.'' The first matter is the claim that the court erred in giving to the jury at the request of respondent these two instructions:

''You are instructed that the price paid by plaintiff condemner for other property is not a proper basis for determining the market value of the property here in question. Such sales are not a fair criterion of value for the reason that they are in the nature of a compromise. The fear of the one party or the other to take the risk of legal proceedings ordinarily results in the one party's paying more or the other party's taking less than is considered to be the fair market value of the property. For these reasons such sales are not proper evidence of value in any case, whether in a proceeding by the same condemning party or otherwise.''

''You are instructed that the price fixed by an agreement between the owner of property and a public corporation seeking to condemn his land by virtue of eminent domain cannot be taken as a criterion of the market value of other land in the vicinity. The price so fixed by compromise, when there can be no other purchaser and the seller has no option to refuse to sell and can only elect between the acceptance of the price offered and the delay, uncertainty and trouble for legal proceedings of an assessment, is not a reasonable or fair

test of just compensation for the defendant's property. It is in no sense a sale in the market.''

The property involved is located upon the top of what is known as Fort Moore Hill, which overlies the North Broadway Tunnel and is immediately adjacent to and northerly from the Hall of Justice in downtown Los Angeles. Respondent produced three, and appellants two, market value witnesses. The disparity in the appraisals of these witnesses was due in the main to the different matters which they took into consideration in formulating their respective opinions. Thus, it appears from the record that the expert witnesses produced by appellants predicated their opinions as to market value almost wholly upon transactions (as far as sales were concerned) by which one or the other of the interested governmental agencies had acquired property within the Civic Center area, either by purchase or condemnation. Indeed, in this regard, appellants frankly admit in their briefs that ''these purchases by the City of Los Angeles and other government entities formed a large part of the basis for the opinions of the experts called by the appellants. . . .'' On the other hand, the expert witnesses called by respondent city expressly excluded these purchases by governmental agencies within the Civic Center area from their consideration as a basis for their expressed opinions, although they had familiarized themselves with the nature and detail of such transactions. Appellants were permitted to cross-examine respondent's witnesses at length as to their knowledge of such transactions and thereby adduced from said witnesses on cross-examination the price paid and other details regarding such transactions.

Contrary to appellants' claim, the challenged instructions correctly state the law governing the jury's determination of the market value problem in the light of the evidence adduced. As claimed by respondent, these instructions are in part a paraphrase and in part a precise reproduction of a quotation from Mr. Lewis in his treatise on Eminent Domain (1st ed., § 447; 3d ed., § 667) as discussed with approval in the early case of *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434, 436 [34 P. 1083]. From such authority the rule appears to be settled in this state that it is not competent for either party in a condemnation proceeding to put in evidence the amount paid by a condemning party to the owners of adjacent lands, however similar they may be to that in controversy, because the price paid under such circumstances

"is not a reasonable or fair test of market value." This rule is in accord with the weight of authority. (See annotation 118 A.L.R. 893 et seq.)

Nor does the record sustain appellants' objection that these instructions were prejudicial because in their statement of the law they did not contain the additional rule announced in the Brizzolara case, *supra*, at page 437, that while evidence of the character specified is not admissible as evidence in chief, such evidence is admissible by way of cross-examination "for the purpose of testing the fairness or honesty of an opinion which the witness may have given upon his direct examination in relation to the value of the property involved in the action." As heretofore noted, in the present action such testimony was permitted on cross-examination of respondent's witnesses, and in a separate instruction the court advised the jury as to the propriety of their taking such testimony into consideration for the aforesaid limited purpose—its impeaching effect. (*Reclamation District No. 730* v. *Inglin,* 31 Cal. App. 495, 500 [160 P. 1098], and cases therein cited.) Considering "the instructions . . . as a whole" and regarding "each in the light of all the others," as the jury was properly admonished to do, it is plain that the court fully and fairly stated the law applicable to the evidence relating to market value.

Appellants' final point of challenge of the judgment concerns the court's refusal to permit them to prove, through testimony of an "architect and structural engineer," the geology and physical characteristics of the hill and tunnel as facts affecting the use to which the particular parcels involved could be put. The rule on this point is stated in the case of *City of Beverly Hills* v. *Anger,* 127 Cal.App. 223, 228 [15 P.2d 867], as follows: "In ascertaining the market value of real property any evidence which tends to show the physical condition of the property, the purpose for which it is employed, or any reasonable use for which it may be adapted, is competent."

While the proffered testimony was therefore admissible, its rejection does not appear to have been prejudicial under the situation disclosed by the record.

Appellants' two expert witnesses on market value were permitted to testify at length concerning their opinions as to the highest and best use of the property under condemnation —the erection of "an apartment house or other building" of medium height—and no questions were asked on cross-exam-

ination which, as respondent states, ''even remotely suggested that the present properties were not adaptable for the highest and best use thus indicated by defendants' witnesses, either by reason of any geological or structural defect in the land which would render it either dangerous or unsuitable for such a purpose.'' In these circumstances it is apparent that both parties to this proceeding were in agreement as to the adaptability of the parcels of land involved and as to the absence of any geological difficulties offered by the hill or tunnel in relation to the possible type of construction consistent with the attested ''highest and best use''; and it is further apparent that the witnesses for both appellants and respondent assumed these favorable physical characteristics affecting the property under condemnation in giving their opinions as to market value. From this standpoint the testimony of appellants' expert engineer would have served only to corroborate an undisputed fact established by competent evidence, and the exclusion of his testimony, though erroneous, could not have affected the decision upon the material issue of market value. On this basis the error would not justify a reversal of the judgment. (Const., art. VI, § 4½.)

The attempted appeals from the orders denying appellants' motion for a new trial and their motion to declare void the entire ''second trial'' are dismissed. The judgment is affirmed.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.

CARTER, J.—I dissent. I agree with what is said in the majority opinion relative to the abortive order granting a new trial and the estoppel invoked against the appellants relative thereto. I also agree that the exclusion of the testimony of appellants' engineering witness was not prejudicial under the circumstances related in said opinion, but I do not agree with that portion of the majority opinion which approves the giving of instructions to the jury in an eminent domain proceeding to the effect that the price paid by the condemner for other similar property in connection with its contemplated project cannot be considered by the jury as evidence of the value of defendant's property involved in the instant proceeding.

The precise issue in this case with reference to the instructions given to the jury is whether or not evidence of prices paid by the condemner for other property similar to defen-

dant's, the property in controversy, is admissible to show the value of defendant's property. But that issue is really only one aspect or phase of a broader problem, to wit, is evidence of the price paid at sales, whether to the condemner or any other person, of other property similar to defendant's, admissible to establish the value of defendant's property. Logic, reason and authority compel the conclusion that evidence of the price paid at sales of similar property to persons other than the condemner is admissible to prove the value of the property in controversy. That such evidence is *relevant* to the value of the property in question cannot be doubted. Value is nothing more than the price for which property may be sold, and the value of other like property is highly probative as to the value of the property in question. It cannot be doubted that in the commercial field there is *no more commonly accepted method for* ascertaining property values than by comparison with other property and the price for which it is sold. It is aptly said: ''that since value is a money-estimate of a marketable article possessing certain definable qualities, the value of other marketable articles possessing substantially similar qualities is strongly evidential and is so treated in commercial life; all the argument and protestation conceivable cannot alter the fact that the commercial world perceives and acts on this relevancy.'' (Wigmore on Evidence (3d ed.), vol. II, p. 505, § 463.) The overwhelming weight of authority supports the proposition that evidence of sales of other similar property and the price paid is admissible to prove market value of the property in question. (*Norwich Assessment Committee* v. *Pointer* (Eng.), 2 K.B. 47; *Stanton* v. *Embry, Administrator,* 93 U.S. 548 [23 L.Ed. 983]; *Miller* v. *United States,* 125 F.2d 75; *United States* v. *Meyer,* 113 F.2d 387; *Tennessee Coal, Iron & R. Co.* v. *State,* 141 Ala. 103 [37 So. 433]; *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381 [5 S.W. 792, 4 Am.St.Rep. 51]; *Crusoe* v. *Clark,* 127 Cal. 341 [59 P. 700]; *Loloff* v. *Sterling,* 31 Colo. 102 [71 P. 1113]; *Flemister* v. *Central Georgia Power Co.,* 140 Ga. 511 [79 S.E. 148]; *Basye* v. *Hayes,* 58 Idaho 569 [76 P.2d 435]; *Rhodes* v. *Davis,* 374 Ill. 65 [28 N.E.2d 113]; *Department of Public Works* v. *Diggins,* 374 Ill. 11 [27 N.E.2d 826]; *West Kentucky Coal Co.* v. *Dyer,* 161 Ky. 407 [170 S.W. 967]; *Warren* v. *Wheeler,* 21 Me. 484; *Mayor, etc. of Baltimore* v. *Hurlock,* 113 Md. 674 [78 A. 558]; *Iris* v. *Town of Hingham,* 303 Mass. 401 [22 N.E.2d 13]; *Forsyth Boulevard* v. *Forsyth,*

127 Mo. 417 [30 S.W. 188]; *Eames* v. *Southern New Hampshire Hydro-Electric Corp.*, 85 N.H. 379 [159 A. 128]; *Village of Reeder* v. *Hanson*, 55 N.D. 331 [213 N.W. 492]; *In re Hudson Coal Co.*, 327 Pa. 247 [193 A. 8]; *Hervey* v. *City of Providence*, 47 R.I. 378 [133 A. 618]; *Kean* v. *Landrum*, 72 S.C. 556 [52 S.E. 421]; *Union Ry. Co.* v. *Hunton*, 114 Tenn. 609 [88 S.W. 182]; *Davis* v. *Cotey*, 70 Vt. 120 [39 A. 628]; *Seattle & M. Ry. Co.* v. *Gilchrist*, 4 Wash. 509 [30 P. 738]; *American States Security Co.* v. *Milwaukee N. Ry. Co.*, 139 Wis. 199 [120 N.W. 844]; *Morrison* v. *Cottonwood Development Co.*, 38 Wyo. 190 [266 P. 117]; Wigmore on Evidence (3d ed.), § 463; Orgel on Valuation Under Eminent Domain (1936), § 135, et seq.; 18 Am.Jur., Eminent Domain, § 351; 17 A.L.R. 101; 118 A.L.R. 869.) There are cases in California which hold that evidence of such sales is not admissible to prove value, that is, valuation witnesses cannot be examined concerning other sales on *direct* examination. (*City of Los Angeles* v. *Hughes*, 202 Cal. 731 [262 P. 737]; *Estate of Ross*, 171 Cal. 64 [151 P. 1138]; *Arnold* v. *Producers' Fruit Co.*, 141 Cal. 738 [75 P. 326]; *Spring Valley W. W.* v. *Drinkhouse*, 92 Cal. 528 [28 P. 681]; *Central Pac. R. Co.* v. *Pearson*, 35 Cal. 247; *Thompson* v. *Stoakes*, 46 Cal.App.2d 285 [115 P.2d 830]; *Atchison, T. & S. F. Ry. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505 [57 P.2d 575]; *Tatone* v. *Chin Bing*, 12 Cal.App.2d 543 [55 P.2d 933]; *Hibernia Sav. etc. Soc.* v. *Ellis Estate Co.*, 132 Cal.App. 408 [22 P.2d 806]; *City of Los Angeles* v. *Deacon*, 119 Cal.App. 491 [7 P.2d 378]; *Merchants Trust Co.* v. *Hopkins*, 103 Cal.App. 473 [284 P. 1072]; *Fishel* v. *F. M. Ball & Co., Inc.*, 83 Cal.App. 128 [256 P. 493]; *Palladine* v. *Imperial Valley F. L. Assn.*, 65 Cal.App. 727 [225 P. 291]; *Reclamation Dist. No. 730* v. *Inglin*, 31 Cal.App. 495 [160 P. 1098].) But it has been intimated or held that the rule is to the contrary. (*Betts* v. *Southern Cal. etc. Exchange*, 144 Cal. 402 [77 P. 993]; *Crusoe* v. *Clark*, 127 Cal. 341 [59 P. 700]; *Moore* v. *Maryland Casualty Co.*, 100 Cal.App. 658 [280 P. 1008]; *Dean* v. *Hawes*, 29 Cal.App. 689 [157 P. 558].) And it has been held that the *value* of other similar property may be shown to establish the value of the particular property in controversy. (The price paid at sales of such other property is its market value on a competitive market under our system of free enterprise.) (*Shoemaker* v. *Acker*, 116 Cal. 239 [48 P. 62]; *Cleland* v. *Thornton*, 43 Cal. 437.) On cross-examination a valuation

witness may be questioned in regard to his knowledge of sales of other property for the purpose of impeachment. (*San Francisco* v. *Tillman Estate Co.*, 205 Cal. 651 [272 P. 585]; *East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal.App. 240 [278 P. 476, 279 P. 178]; *Los Angeles Gas & Elec. Corp.* v. *Etienne*, 83 Cal.App. 645 [257 P. 123]; and see cases cited *supra.*) If such evidence is admissible on cross-examination it cannot be denied that it must be considered *relevant* to the value of the property in controversy. Otherwise what difference would it make whether the expert valuation witness did or did not know of other sales if the existence of such sales had no bearing upon the value of the property in controversy.

So much for *relevancy,* but a ground commonly given for the exclusion of evidence of the price paid for similar property on direct examination is that to do so permits an excursion into collateral matters (e. g., whether the other property is similar, the circumstances of the sale, and its proximity to the instant problem) resulting in a confusion of issues and loss of time. There is little danger of confusion. The issue is value and there should be no difficulty in maintaining a clear course between other sales and that issue. Loss of time should not be a reason to exclude highly pertinent evidence. If so-called collateral issues are permitted on cross-examination why should they not be permitted on direct? Indeed the trier of fact is confused by such a distinction. Merely asking the witness as to his knowledge of other sales leaves the matter wholly up in the air. The jury knows nothing of the pertinency of such other sales and, as a practical matter, the trial court may instruct unavailingly until doomsday to the effect that reference to such other sales was only for the purpose of impeachment. The impression has been made on the jury. Why not allow such evidence on direct examination as relevant to value and permit a full disclosure to the jury of the relevancy of the other sales? Other sales are in fact not collateral to the main issue. They are directly pertinent to it. What property is selling for in the community is the measure of the market price. In any event the modern tendency is to liberalize the rules of evidence. The discretion of the trial judge is a barrier against fanciful flights into remote subjects. In answer to the objection with regard to collateral issues "it may be noted that this objection may or may not exist in a given instance, and that the rational and practical way of meeting it is to allow

the trial Court in its discretion to exclude such evidence when it does involve a confusion of issues, but otherwise to receive it." (Wigmore on Evidence (3d ed.), vol. II, p. 505, § 463; See, 4 Cal.L.Rev. 151, 152.)

In my opinion the cases heretofore cited which hold that the sales of other similar property are not admissible to prove value are clearly unsound and should be overruled. Their force is considerably weakened if not destroyed by the addition in 1937 of section 1872 to the Code of Civil Procedure. It reads: "Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel." The main purpose of that section was to do away with the former court made rule that an expert witness could not give his reasons. *But if he may give his reasons those reasons may consist of reference to prices paid in sales of similar property in the vicinity.* Certainly, he could give such reason for he could be asked on cross-examination concerning other sales. Being able to testify to these sales as reasons, they are direct and probative evidence on the value of the property in controversy.

In the instant case the challenged instructions to the jury dealt with the evidence of the price paid at sales of other property to the condemner in acquiring property for its project. On the general theory evidence of those sales was probative evidence of value. The only question is whether it should be excluded because it violated the substantive law test of market value; that is, a buyer and seller willing to deal and not acting under compulsion. That, however, is a matter going to the weight or value of the evidence not its admissibility and can properly be governed by the discretion of the trial judge. (See Wigmore on Evidence (3d ed.), vol. II, p. 505, § 463; 4 Cal.L.Rev. 151, 152.) If the circumstances of a particular sale are such that it was not a free bargain between the parties it might not be very valuable in ascertaining market value, but that depends upon the facts. All sales merely because they are to the condemner are not under fear or compulsion or lacking in freeness. The condemner may well be paying what it feels the property is worth and the buyer selling for a price he believes is fair. The only case in California that declares evidence of such sales inadmissible is *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434 [34 P. 1083], and there it was conceded that

evidence relating to other sales could be *developed on cross-examination.* If it was proper there as bearing on value it certainly was pertinent on direct examination. There are authorities declaring evidence of sales to the condemner admissible in a condemnation suit. (*Shaw* v. *Monongahela Ry. Co.*, 110 W.Va. 155 [157 S.E. 170]; *Hadley* v. *Board of Chosen Freeholders of Passaic County*, 73 N.J.L. 197 [62 A. 1132]; *Ross* v. *Commissioners of Palisades Interstate Park*, 90 N.J.L. 461 [101 A. 60]; *Eames* v. *Southern New Hampshire Hydro-Electric Corp.*, 85 N.H. 379 [159 A. 128]; *Louisana Highway Commission* v. *Merchant* (La.App.), 174 So. 696; *Washington Home* v. *Hazen*, 70 F.2d 847; 118 A.L.R. 869, 898; Orgel on Valuation under Eminent Domain, § 146.) In *Eames* v. *Southern New Hampshire Hydro-Electric Corp., supra,* p. 130, the court said: ''What the courts, holding to the majority view [that other sales to the condemner are not admissible], have seemingly done, is to adopt the mere pronounced phenomena incident to sales to a condemner as a conclusive test of their probative character. Although such sales are less likely to have useful evidentiary value than sales to strangers, no logical reason in principle is perceived why they should not have the same treatment. Their relative immunity from irrelevant influences is merely a matter of degree, and their reasonable freedom therefrom purely a matter of proof. The test of the probative character of a given sale of either class is to be found in answer to the inquiry whether the motivating circumstances influencing the parties thereto were such as probably to materially affect the price paid, and therefore to destroy its usefulness as a standard of value.''

In my opinion the giving of the instructions complained of constituted prejudicial error justifying a reversal of the judgment.

Traynor, J., and Schauer, J., concurred.

Appellants' petition for a rehearing was denied July 24, 1946. Carter, J., Traynor, J., and Schauer, J., voted for a rehearing.